*Baltimore County, Maryland, et al. v. Baltimore County Fraternal Order of Police, Lodge No. 4*, No. 96, September Term, 2013.

**Local Government—Collective Bargaining—Statutory Interpretation**
Under Baltimore County Code § 4-5-201(a)(2) of the Employee Relations Act, the Fraternal Order of Police, Lodge No. 4 (FOP), may file an unfair labor practice complaint only with an agency selected by the County's Director of Human Resources. The provision does not require necessarily that the duty of designating a third-party agency is ministerial, and it does not rule out the possibility of the Director having some discretion in determining when or under what circumstances he or she designates a third party.

**Labor and Employment—Collective Bargaining—Writ of Mandamus**
Where the obligation to perform some particular duty is unclear or involves the exercise of any "vestige of discretion," or where the party seeking enforcement of the alleged duty does not have a clear right to the performance of the duty it seeks to compel, the remedy of a writ of mandamus should not be granted. Because we conclude that the Employee Relations Act does not mandate that the Director designate a third-party agency invariably when the FOP files a complaint, we hold that the grant of a writ of mandamus here was improper.

Circuit Court for Baltimore County
Case No. 03-C-11-010608

IN THE COURT OF APPEALS OF

MARYLAND

Argued: 4 June 2014

No. 96

September Term, 2013

BALTIMORE COUNTY,
MARYLAND, et al.

v.

BALTIMORE COUNTY
FRATERNAL ORDER OF POLICE
LODGE NO. 4

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.
Watts, J., joins judgment only.
McDonald, J., Dissents.

Filed: July 29, 2014

At the heart of this dispute is § 4-5-204(a)(1)(i) of the Employee Relations Act (the "Act") of the Baltimore County Code ("BCC"), which states, in pertinent part, that either party subject to the Act "may file a verified complaint with an independent third party agency designated by the [County's] Director of Human Resources that the other party has committed an unfair labor practice." The central question is whether the County's Director of Human Resources (the "Director") had an imperative and ministerial duty to designate an independent third party agency when the Fraternal Order of Police, Lodge No. 4 (the "FOP"), the bargaining agent for covered Baltimore County police employees, submitted to him an "unfair labor practice" complaint grounded on a unilateral change made by the County to a policy included in the County's "Personnel Manual"[1]—but which was not part of the relevant memorandum of understanding ("MOU") between the County and the FOP and was, at least ostensibly, not subject to collective bargaining negotiation. The Circuit Court for Baltimore County granted a writ of mandamus compelling the Director to designate an independent third party agency to consider the FOP's unfair labor practice complaint. Because we conclude that neither the phrase "designated by the Director of Human Resources" in BCC § 4-5-204(a)(1)(i), nor any other provision in the Act, imposed an undisputable, non-discretionary duty on the Director to refer every unfair labor practice complaint to an independent third party agency, we reverse the judgment of the Circuit Court.

---

[1] The County referred to the Policies and Procedures Manual as "Personnel Manual" in its Petition for Certiorari. We use the term Policies and Procedures Manual to refer to the manual in which the pertinent Attendance Recognition Program was incorporated.

## I. Background.

### a. The Employee Relations Act and the Attendance Recognition Program.

In order "to promote the improvement of employer-employee relations within the various agencies of the county government," *see* BCC § 4-5-201(a)(1), the Act sets out "a uniform basis for recognizing the right of employees of the classified service of the county to" join or refrain from joining an employee organization and to "[b]e represented by the employee organizations in their employment relations and dealings with the county administration." BCC § 4-5-201(a)(1). Specifically, the purpose of the Act is

> to establish procedures by which the county administration or its designated representatives may negotiate in good faith with an exclusive representative with affirmative willingness **to resolve grievances**[2] **and disputes relating to wages, hours, and other terms and conditions of employment, as defined in this act, and to finalize in writing a memorandum of understanding**[3] **of matters agreed on**, acting within the framework of fiscal procedures, laws, rules, and regulations, and Charter provisions of the county and the constitution and laws of the state.

BCC § 4-5-201(a)(2) (emphasis added).

---

[2] The Act defines a "grievance" as "any dispute concerning: (1) [a]pplication or interpretation of the terms of a written memorandum of understanding; (2) [d]iscriminatory application or misapplication of the rules or work practices of an agency of the county; (3) [s]uspension, dismissal, promotion, or demotion of an employee; or (4) [a] complaint about an examination or examination rating." BCC § 4-5-101(h).

[3] A "memorandum of understanding" ("MOU"), as defined in the Act, is "a written memorandum signed by the County Executive and the exclusive representative, covering all items agreed to by both parties and that the county administration in good faith approves." BCC § 4-5-101(j). The Act establishes a number of procedures in relation to MOUs. *See BCC* §§ 4-5-201(a)(2), 4-5-202(b), 4-5-310(c), 4-5-312, 4-5-313.

The Act prohibits the County and employee organizations from engaging in certain conduct labeled "unfair labor practices." BCC § 4-5-203. "Unfair labor practices" is not defined precisely, but BCC § 4-5-203 enumerates five categories of prohibited conduct, one of which is to "[r]efuse to negotiate in good faith with an exclusive representative." BCC § 4-5-203(a)(4). The next section, BCC § 4-5-204, establishes the process through which either the County or an employee organization may file an unfair labor practice complaint. Under BCC § 4-5-204(a)(1)(i), "[t]he county administration or an employee organization may file a verified complaint with an independent third party agency designated by the Director of Human Resources that the other party has committed an unfair labor practice." The only requirement for the content of a complaint is that it "shall include a detailed statement of the alleged unfair labor practice." BCC § 4-5-204(a)(1)(ii). Once the complaint is filed with the designated independent third party agency, the agency may "[i]ssue an order dismissing the complaint," "[o]rder a further investigation," or "[o]rder a hearing on the complaint at a designated time and place." BCC § 4-5-204(b).

The Act discusses negotiations in general under BCC § 4-5-310, and requires "[t]he county administration and the exclusive representatives" to "[n]egotiate in good faith with respect to: (i) [w]ages, hours, and terms and conditions of employment; and (ii) [t]he drafting of a written memorandum of understanding containing all matters agreed upon, signed by authorized representatives of both parties." BCC § 4-5-310(a)(2). BCC § 4-5-310(b) establishes that the parties' "obligation to negotiate in good faith: (1) [r]equires that a good faith effort be made by both parties to arrive at an agreement and to

reduce the agreement to writing within a reasonable period of time; but (2) [d]oes not require that any concessions be made by either party."

The Act explains further the "County Rights and Responsibilities," stating that

> it is the exclusive right of the [C]ounty to: (1) [d]etermine the purposes and objectives of each of its constituent offices and departments; (2) [s]et standards of services to be offered to the public; (3) [e]xercise control and discretion over its organization and operations; and (4) [d]etermine the methods, means, personnel, and other resources by which the county's operations are to be conducted, including: (i) [t]he use of volunteers; and (ii) [t]he contracting out of work if considered necessary.

BCC § 4-5-202(a).

Under BCC § 4-5-202(b), and "[s]ubject to applicable provisions of a memorandum of understanding . . . , the county may: (1) [d]irect its employees; (2) [h]ire, promote, transfer, assign, or retain employees; (3) [e]stablish reasonable work rules; and (4) [d]emote, suspend, discharge, or take any other disciplinary action against its employees for just cause." Finally, in reference to "grievance rights," the Act adds that "[n]othing in this section may be construed to deny the right of an employee to submit a grievance with regard to the county's exercise of its rights under this section." BCC § 4-5-202(d).

This case involves the putative intersection of the Act and the County's Attendance Recognition Program, which is set forth in the County's Policies and Procedures Manual. The Act does not mention either the County's Policies and

Procedures Manual or its Attendance Recognition Program.[4] Section 1 of the Policies and Procedures Manual, "Code of Conduct and Policies," however, is preceded by the following disclaimer:

> This manual was published to aid employees and supervisors in understanding various policies, personnel rules, regulations and procedures. **It does not constitute an express or implied contract and is not intended to create any rights, contractual or otherwise not set forth in the Baltimore County Code.** The County has the right to modify or discontinue any policy referenced in this manual at any time without prior written notification.

(Emphasis in original.)

### b. The Dispute Commences.

The County instituted unilaterally the across-the-board "Attendance Recognition Program," as part of the "Absence Control Policy" in the County's Policies and Procedures Manual, "[i]n an effort to encourage good attendance and recognize those employees who consistently maintain regular attendance." Under the 2010 initial version of the Attendance Recognition Program, "[a]ny employee completing one calendar year of employment without using any sick leave will receive funds to purchase a $100 US Savings Bond, and a letter of congratulations from the County Executive." On 24 June 2011, the County alerted the FOP that it intended to amend the Attendance Recognition Program by discontinuing, starting in FY 2011, the "funds to purchase a $100 US

_____

[4] Because neither party included any version of the FOP's and County's MOU in the record, we are unable to comment on whether the MOU references the County's Policies and Procedures Manual, but we are able to note that both parties agreed that the MOU does not reference the Attendance Recognition Program.

Savings Bond," but leaving the letter of congratulations recognition in place (woo hoo!).[5]

The County's rationale was explained in detail in a subsequent broadcast email[6] as follows:

> In a further effort to reduce costs, the County will discontinue the monetary award for the Attendance Recognition Program for employees who have not used sick leave during the calendar year. The County initiated this award to improve available productive time. It has been only modestly successful in that regard and employees already have the incentive of utilizing accrued sick leave as creditable service toward retirement.

The FOP responded to the County's announced intention to limit the Attendance Recognition Program in a letter dated 30 June 2011 to George Gay, the Director of Human Resources, requesting to bargain over the County's decision to discontinue the savings bond portion of the Attendance Recognition Program. In a letter dated 9 August 2011, the Director informed the FOP that the County declined its request to bargain because: (1) the Attendance Recognition Program was not included in a memorandum of understanding; (2) the County considered the program a management prerogative; and (3) "by its own terms, the Personnel Manual [was] meant to be a non-negotiable management tool . . . ." On 13 September 2011, the FOP submitted to the Director an "unfair labor practice complaint," alleging that "[t]he decision of Baltimore County to discontinue the dollar award for the purchase of a savings bond for the calendar year 2011 as stated in the

---

[5] Under the revised 2011 version of the Attendance Recognition Program, "[a]ny employee completing one calendar year of employment without using any sick leave will receive a letter of congratulations from the County Executive."

[6] We refer to this email, dated 21 September 2011, which the County sent to all of its employees, because the 24 June 2011 communication was not included in the record.

Absence Control Policy" and the County's subsequent refusal to bargain over the change constituted "an unfair labor practice under BCC §§ 4-5-203(a)(1) and (4) of the [BCC]."[7]

The Director acknowledged receipt of the FOP's unfair labor practice complaint and suggested initially the designation of "the American Arbitration Association (AAA) to provide a hearing officer to investigate the complaint with each party paying half the cost of the arbitrator and the court reporter." Subsequently, however, the Director notified the FOP in a letter dated 16 September 2011 that the County refused to participate in or pay for a review by any independent third party agency.

### c.  On to the Courts.

On 25 October 2011, the FOP filed in the Circuit Court for Baltimore County a "Complaint for Declaratory and Injunctive Relief and for Writ of Mandamus," seeking "to enforce [BCC § 4-5-204], and require that Baltimore County (the 'County') take the ministerial act required by the County Code and designate a third party agency to investigate and determine whether an unfair labor practice charge has been committed." The Complaint does not contain separate causes of actions or counts. In the Complaint's single "Claims" section, the FOP stated:

> The County has refused to perform the ministerial act set forth in [BCC §] 4-5-204. Because the County has refused to designate a third party agency to receive and investigate the FOP's unfair labor practice complaint, the FOP has no adequate remedy with regard to the FOP's contention that the County has refused to bargain with the FOP over wages and other terms and conditions of employment.

---

[7] The FOP explained in its letter to the Director, "[s]ince the Labor Commissioner has not yet designated [an independent third party] agency, I am filing the Complaint with you and requesting that you immediately designate an independent third party agency . . . ."

As "Relief," the FOP prayed for the Circuit Court to:

    A. Issue **an order declaring** that the Defendants violated the Employee Relations Act by refusing and/or failing to designate an independent third party agency to receive and investigate unfair labor practice complaints.

    B. Issue **a Writ of Mandamus** ordering Defendants to designate an independent third party agency to receive and investigate the FOP's September 13, 2011 unfair labor practice complaint.

    C. **Enjoin** the Defendants from refusing and/or failing to designate an independent third party agency to receive and investigate unfair labor practice complaints.

    D. Award such other relief as is just and reasonable.

On 5 December 2011, the County filed a Motion to Dismiss or for Summary Judgment, addressing, under separate headings, the FOP's specific requests for relief: declaratory judgment, injunctive relief, and writ of mandamus. The FOP responded with a "Cross-Motion for Summary Judgment and Opposition to Defendants' Motion to Dismiss or for Summary Judgment." In the FOP's Cross-Motion, it urged the Circuit Court to "issue a writ of mandamus ordering Defendants to designate an independent third party to receive and investigate Plaintiff's unfair labor practice complaint," stating: "Mandamus should issue because Plaintiff has a clear legal right to have Defendants perform the ministerial task required by the Baltimore County Code." The FOP's Cross-Motion attached the following proposed order:

> The matter is before the Court on the Plaintiff's Cross-Motion for Summary Judgment and Defendants' Motion to Dismiss or for Summary Judgment
>
> For good cause shown,

It is hereby **ORDERED** that Defendants' motion is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment is **GRANTED**.

It is further **ORDERED** that Defendant George Gay [the Director of the Office of Human Resources] is to designate an independent third party agency to receive and investigate Plaintiff's September 13, 2011 unfair labor practice complaint;

It is hereby **DECLARED** that the Defendants violated the Employee Relations Act by refusing and/or failing to designate an independent third party agency to receive and investigate unfair labor practice complaints; and

It is further **ORDERED** that Defendants are **ENJOINED** from refusing and/or failing to designate an independent third party agency to receive and investigate unfair labor practice complaints in the future.

On 13 January 2012, the County filed a Response to Plaintiff's Cross-Motion for Summary Judgment. The County noted its view that the FOP's motion "focuses solely on its request for the issuance of a Writ of Mandamus and appears to have abandoned, for summary judgment purposes, its request for declaratory and injunctive relief."

A hearing was held on 20 June 2012 on the dueling summary judgment motions. At the beginning of the hearing, the trial judge acknowledged that the proceeding was "a hearing on basically cross-motions for summary judgment, based upon a complaint for mandamus, . . . injunctive relief[,] and declaratory relief."[8] The Court's Order, signed on 20 June 2012 and entered on 26 June 2012, stated:

---

[8] The relevant docket entry states that a hearing was held in regards to the cross-motions for summary judgment on 20 June 2012. The docket entry states also "Order to be filed."

This matter was before the Court for hearing on Cross Motions to Dismiss or for Summary Judgment on June 20, 2012. For the reasons stated, it is this 20th day of June, 2012,

ORDERED that the Motion for Summary Judgment of the Plaintiff, the fraternal Order of Police, Baltimore County, Lodge 4 ("the FOP") (Paper 6000) is GRANTED; and it is further

ORDERED that the Motion to Dismiss or for Summary Judgment of the Defendants (Paper 5000) is DENIED; and it is further

ORDERED that a Writ of Mandamus shall issue to require the Defendants to designate an independent third party agency to receive and investigate the September 13, 2011 FOP complaint alleging an unfair labor practice, as required pursuant to Baltimore County Code, 214-5-204.

The corresponding docket entry provided: "Order of Court requiring defs to designate an independent third party agency to receive & investigate the FOP complaint."

The County noted an immediate appeal to the Court of Special Appeals. The intermediate appellate court affirmed the judgment of the Circuit Court in an unreported opinion. On 18 October 2013, we granted the County's Petition for Writ of Certiorari to consider the following question: "Whether a personnel policy set forth in the [Policies and Procedures Manual], which, by definition is not subject to negotiation, should be referred to a third party neutral simply upon the invocation by FOP of the phrase 'refusal to negotiate in good faith'[?]"[9] *Baltimore Cnty. v. Order of Police*, 435 Md. 266, 77 A.3d 1084 (2013).

_____

[9] In its brief before us, the FOP phrased the pertinent question as follows: "Whether the Circuit Court was legally correct when it issued a writ of mandamus requiring the Petitioners to designate an independent third party agency to receive and investigate the Appellee's unfair labor practice complaint?"

## II. Prerequisites to the Viability of an Appeal

### a. Final Judgment

During oral arguments, members of the Court raised *sua sponte* the jurisdictional

issue of whether the trial court entered a final judgment.[10] *See* Maryland Code (1973,

---

[10] Although the parties did not raise a jurisdictional issue in their briefs, the County noted in its Petition for Writ of Certiorari that "[t]he judgment of the Circuit Court did not adjudicate all claims in the action in their entirety, since it never disposed of FOP's claims for declaratory and injunctive relief." Petition for Writ of Certiorari at 1; *see also id.* at 6 ("There was no determination made by the Circuit Court with respect to FOP's request for declaratory and injunctive relief.").

Similarly, the Court of Special Appeals "paused" briefly in a footnote of its unreported opinion to acknowledge that "the [C]ircuit [C]ourt did not dispose of FOP's claims for declaratory and injunctive relief," stating:

> It is axiomatic that "an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action[]" is generally not a final judgment. Md. Rule 2-602(a)(1). The purpose of this rule "is to prevent piecemeal appeals by providing that **only where a trial court has fully adjudicated all the issues in a case will an appeal be permitted**." *Russell v. Am. Sec. Bank, N.A.*, 65 Md. App. 199, 202 (1985). (Emphasis added).
>
> Further, the Court of Appeals has emphasized that there must be a declaratory judgment entered in a case disposing of a declaratory judgment action. *Jackson v. Millstone*, 369 Md. 575, 593-95 (2002). *See also Harford Mutual v. Woodfin*, 344 Md. 399, 414-15 (1997) ("This Court has reiterated time after time that, when a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, 'the trial court must render a declaratory judgment.'") (quoting *Christ v. Department*, 335 Md. 427, 435 (1994)).
> At oral argument, however, the FOP conceded that it had waived its claims to any additionally requested relief, noting that the writ of mandamus was what it truly sought. As a consequence, we conclude that the circuit court's order of June 25, 2012, comports with Maryland's longstanding rule that

(continued…)

-11-

2013 Repl. Vol.), Courts & Judicial Proceedings Article, § 12-301;[11] *Schuele v. Case*

*Handyman & Remodeling Servs.*, 412 Md. 555, 565, 989 A.2d 210, 215-16 (2010)

---

(…continued)

> ordinarily requires a judgment's finality as a jurisdictional prerequisite to the viability of an appeal. We shall therefore address the merits of the parties' contentions presented in this appeal.

[11] Maryland Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Article, § 12-301 provides:

> Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

Md. Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Art., § 12-303 itemizes interlocutory orders that are appealable immediately, although not a final judgment.

> A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:
>> (1) An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order;
>> (2) An order granting or denying a motion to quash a writ of attachment; and
>> (3) An order:
>>> (i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(continued…)

(ii) Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii) Refusing to grant an injunction; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction;

(iv) Appointing a receiver but only if the appellant has first filed his answer in the cause;

(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court;

(vi) Determining a question of right between the parties and directing an account to be stated on the principle of such determination;

(vii) Requiring bond from a person to whom the distribution or delivery of property is directed, or withholding distribution or delivery and ordering the retention or accumulation of property by the fiduciary or its transfer to a trustee or receiver, or deferring the passage of the court's decree in an action under Title 10, Chapter 600 of the Maryland Rules;

(viii) Deciding any question in an insolvency proceeding brought under Title 15, Subtitle 1 of the Commercial Law Article;

(ix) Granting a petition to stay arbitration pursuant to § 3-208 of this article;

(continued…)

(emphasizing that "appellate jurisdiction, except as constitutionally created, is statutorily granted" and that "§ 12-301 of the Courts and Judicial Proceedings Article of the Maryland Code authorizes appeals only from 'a final judgment entered in a civil or criminal case by a circuit court.'") (quoting *Addison v. Lochearn Nursing Home*, 411 Md. 251, 261, 983 A.2d 138, 145 (2009)); *Estep v. Georgetown Leather Design*, 320 Md. 277, 282, 577 A.2d 78, 80 (1990) ("For an appellate court to have subject matter jurisdiction, an appeal must be taken from a final judgment or an appealable interlocutory order.") (citing Md. Code (1984 Repl. Vol., 1989 Cum. Supp.), Courts & Judicial Proceedings Art., §§ 12-301 & 12-303). Upon reflection, we conclude that the Circuit Court's 20 June 2012 Order constituted a final, appealable judgment.

Determining whether a trial court's ruling constitutes a final judgment requires an analysis of "three attributes": (1) the court must intend it to be "an unqualified, final disposition of the matter in controversy;" (2) "it must adjudicate or complete the adjudication of all claims against all parties," and (3) "the clerk must make a proper record of it" on the docket.[12] *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773

---

(…continued)

> (x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order; and
> (xi) Denying immunity asserted under § 5-525 or § 5-526 of this article.

[12] Md. Rule 2-602 provides:

(continued…)

-14-

(1989). In applying these requisites to the present case, we conclude first that the trial judge, by her Order issuing a Writ of Mandamus, denying the County's Motion for Summary Judgment, and granting the FOP's Cross-Motion for Summary Judgment (hereinafter, the "Order") evinced an intent to dispose of all pending matters and put the parties out-of-court. Not only did the trial judge grant the FOP's Cross-Motion for Summary Judgment and deny the County's Motion to Dismiss or for Summary Judgment, she granted a writ of mandamus to implement her ruling. *See, e.g.*, *Doehring v. Wagner*, 311 Md. 272, 533 A.2d 1300 (1987) (holding that an order granting summary judgment constituted a final, appealable judgment because nothing was left to be done to dispose of the matter and put the parties outside of the court). As further evidence of the

---

(…continued)

**(a)** Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
> (1) is not a final judgment;
> (2) does not terminate the action as to any of the claims or any of the parties; and
> (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

**(b)** When Allowed. If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
> (1) as to one or more but fewer than all of the claims or parties; or
> (2) pursuant to Rule 2-501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

-15-

judge's intent to dispose of all matters in this case, the trial judge stated at the hearing that "the **only question** in front of me is whether what's alleged here is a labor practice because then it's up to the arbitrator." (Emphasis added.) She continued then to resolve "the only question,"

> in terms of what I have got to rule on today, . . . I think it is a requirement that it go to arbitration, because that's what the code requires. . . . Therefore, I am granting their motion for summary judgement [sic] and will issue an order that just directs that the county refer it to the process as it's required under the code, . . . . That's my best judgment on it.

Thus, the record is clear that she left nothing to dispose of in the dispute. *See, e.g.*, *Rohrbeck*, 318 Md. at 41, 566 A.2d at 773-74 (noting that the question for finality is whether the trial court's ruling or order was intended as "an unqualified, final disposition of the matter in controversy" that "le[ft] nothing more to be done in order to effectuate the court's disposition of the matter").

Second, the Order adjudicated as to all the parties the single claim presented in the FOP's Complaint. "A 'claim' . . . is defined as a 'substantive cause of action' that encompasses all rights arising from common operative facts." *Schuele*, 412 Md. at 568, 989 A.2d at 218 (citations omitted). Different prayers of relief, when sought for the same cause of action, do not represent multiple claims. *See East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343, 346 (1982). Accordingly, even though the Complaint contained multiple prayers for relief, there was but one claim, as evidenced by the sole count alleging the County's violation of the County law, but requesting three forms of relief. The Circuit Court's issuance of a writ of mandamus resolved purportedly the claim in its entirety, particularly when one considers (as we shall at greater length later) the nature of a writ of

mandamus, which is a very specific and extraordinary type of relief that issues only if no other "ordinary adequate legal remedy" is available, i.e., if the Circuit Court determined implicitly here that declaratory and injunctive relief were not available. *See, e.g.*, *Wilson v. Sims*, 380 Md. 206, 223, 844 A.2d 412, 423 (2003) ("[I]f the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, **or if there be any ordinary adequate legal remedy to which the party applying could have recourse**, [the] writ will not be granted.") (emphasis added) (internal citations omitted).

Finally, it is undisputed that the judgment was entered on the docket.[13]

### b. Lack of a Declaratory Judgment is Procedural Error, at Worst.

On a related, but separate, point of procedure, the Circuit Court erred by failing to declare the rights of the parties, if a declaratory judgment was sought properly. This error

---

[13] Our decision here to proceed to the merits does not run afoul of *Taha v. Southern Management Corp.* 367 Md. 564, 567-68, 790 A.2d 11, 13 (2002). In *Taha*, after Petitioner Taha's employment at Southern Management Corp. ("SMC") was terminated, and the maintenance supervisor accused Taha of stealing some items, Taha filed a lawsuit against SMC and two of its employees. The jury returned arguably conflicting verdicts—two verdicts were in favor of the employees, and one verdict was against SMC (on the basis of respondeat superior liability). The only verdict entered on the docket was the one against SMC. 367 Md. at 570-71, 790 A.2d at 13, 15 ("[W]e have no docket entries and no separate documents for the employee verdicts indicating a final judgment, and upon which the issue of irreconcilability rests."). Here, however, the Circuit Court's Order and the docket entry stating "Order of Court requiring def[endants] to designate an independent third party agency to receive [and] investigate the FOP complaint" resolved the single claim upon which all of the plaintiff's three prayers for relief were based, left no right of either party unsettled, and put the parties out-of-court effectively. Nothing in the present opinion diminishes or is at odds with our *Taha* opinion.

is procedural at worst, however, and not jurisdictional.[14] *See, e.g., Bowen v. City of Annapolis*, 402 Md. 587, 609, 766 A.2d 242, 255 (2007) ("This error by the Circuit Court, however, is not jurisdictional and is not fatal to our reaching the merits of Petitioners' appeal.") (citations omitted); *see also Point's Reach Condo. Council of Unit Owners v. Point Homeowners Assoc.*, 213 Md. App. 222, 73 A.3d 1145 (2013); *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307 n.7, 841 A.2d 858, 862 n.7 (2004); *Bushey v. Northern Assur. Co. of Am.*, 362 Md. 626, 651, 766 A.2d 598, 611 (2001). Because the error is not jurisdictional, "'[t]his Court may, in its discretion, review the merits of the controversy and remand for the entry of an appropriate declaratory judgment by the circuit court.'" *Bowen*, 402 Md. at 609, 937 A.2d at 255 (quoting *Bushey*, 362 Md. at 651, 766 A.2d at 611). We elect to do so here. *See Point's Reach*, 213 Md. App. at 282-83, 73 A.3d at 1179-80 (noting multiple reasons why such use of discretion is appropriate in cases such as the current one).

### III. Analysis of the Merits.

#### a. Standard of Review.

Because the Circuit Court's grant of summary judgment was based on its view of statutory interpretation questions, which are legal issues, we review the ruling for legal correctness, without deference to that court's conclusions of law. *Mummert v. Alizadeh*, 435 Md. 207, 212, 77 A.3d 1049, 1052 (2013) ("The questions before us in this appeal involve statutory interpretation, which are legal issues that we view without deference to

---

[14] The failure to declare the rights of the parties in an order, or in a separate document, does not affect the finality of the judgment here.

the legal analysis of the trial court.") (citing *Harvey v. Marshall*, 389 Md. 243, 257, 884 A.2d 1171, 1179 (2005) in turn citing *Mohan v. Norris*, 386 Md. 63, 66–67, 871 A.2d 575, 577 (2005)).

### b. The Parties' Arguments.

The FOP contends that "the plain language of the Employee Relations Act permits only a single interpretation"—"when an employee organization files an unfair labor practice complaint alleging an unfair labor practice identified by the County Code (here, a refusal by the County to bargain), the Act 'mandates' the designation by the County of an independent third party to investigate the complaint." The FOP argues that the Director failed to perform his imperative duty to designate an independent third party agency to consider the FOP's unfair labor practice complaint and that the FOP had a clear right to the performance of the duty imposed on the Director. The FOP maintains that, even if not every decision the County makes is subject to negotiation, "the court's task is . . . not to decide the merits [or the arbitrability] of the underlying dispute but instead to compel the County to follow the clear requirements of the County Code."

The County contends, for its part, that the Act does not contain a clear mandate that the Director must designate an independent third party agency for each and "every perceived slight allegedly committed by the County in conducting its extensive operations." Further, the County points out that the Act provides that "all agreements with respect to 'matters relating to wages, hours, and terms and conditions of employment . . . shall be included in a memorandum of understanding.'" Because the Attendance Recognition Program was not included in a memorandum of understanding,

the County argues that it was never established as a patently negotiable issue under BCC § 4-5-204(a)(1)(i). The Director had therefore no imperative duty, and in fact no authority, to refer the matter to an independent third-party agency for arbitration proceedings.

Further, because the Attendance Recognition Program was not included in a memorandum of understanding, the Act provides the FOP no clear entitlement to negotiate with the County or to have the Director refer the complaint to an independent third party agency. Additionally, the County laments that, based on "the Circuit Court's and the [Court of Special Appeals's] interpretation of the Act, the addition, modification, or discontinuance of any of the County's numerous personnel policies will be subject to second-guessing by an outside agent, at the mere request of any of the six County employee organizations." In the County's view, compelling the Director to designate an arbitrator to consider a patently non-negotiable issue would not only be a waste of the County's resources, but would lead to absurd and illogical results.[15]

---

[15] During oral arguments, the FOP's attorney gave the County some assurance that absurdity and illogic should not follow necessarily from acceptance of the FOP's interpretation of the Act. Whether intended, the following exchanges resulted also in a concession of sorts by the FOP that not all complaints had to be referred to a third party agency.

Counsel for the FOP argued that the statute gave no discretion to the Director to decide whether an unfair labor practice complaint is valid and, therefore, whether to refer the complaint to an arbitrator. A member of the Court asked counsel for the FOP, "Does that mean anything that [the FOP] label[s] an unfair labor practice has to be referred? Suppose they said, 'We don't like the landscaping at the old Towson Court House'—does that have to be referred?" Counsel for the FOP responded that the way this "question is answered is consistent with the way this Court has addressed questions of arbitrability,"

(continued…)

### c. Writ of Mandamus and Statutory Construction.

We begin by reviewing the legal principles underlying the writ of mandamus form of relief to elucidate the proper interpretation of what effect any ambiguity in the Act may have on the grant of the writ of mandamus in this case. Then, we shall examine the Act to determine whether the Circuit Court was legally correct in granting the FOP's request for a writ of mandamus to compel the Director to designate an independent third party to consider the FOP's unfair labor practice complaint. Finally, we shall consider those cases that employ a policy of favoring arbitration where an arbitration clause or provision is unclear.

### 1. Writ of Mandamus.

---

(…continued)

citing this Court's reasoning in *Baltimore Cnty., Fraternal Order of Police, Lodge No. 4 v. Baltimore Cnty.*, 429 Md. 533, 57 A.3d 425 (2012), and a Circuit Court ruling, *see Sunterra Corp. v. Ernst & Young L.L.P.*, No. 24-C-02-002963, 2003 WL 23497720 (Md. Cir. Ct. 30 Jan. 2003). Although these two cases discuss a related point—that a court should be careful not to "stray into the merits," counsel for the FOP reiterated that the policy in Maryland is to err on the side of arbitrability when the scope of an arbitration provision is ambiguous, or where it is unclear whether the dispute is arbitrable. *But see infra* Section III(c)(3).

Later, another member of the Court asked counsel for the FOP, "In response to [the earlier] hypothetical [from the Bench] about the landscaping—if that were grieved by the union, the County has to appoint someone, or can they say, 'No, we're not going to play that game.'" Counsel for the FOP responded, "Yes, I would agree that landscaping in front of a building would not be subject to a duty to bargain, and in that instance, the County could say, just like any party can say, under general arbitral law, 'We are not going to arbitrate this because it is not subject to arbitration.'" Yet another judge asked for clarification of the legal principles that guided counsel in his answer that a complaint about the landscaping would not be arbitrable. Counsel for the FOP answered, **"Because landscaping has absolutely nothing to do with terms and conditions of employment."** (Emphasis added.)

The fundamental purpose of a writ of mandamus is "to compel inferior tribunals, public officials, or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear right." *Town of La Plata v. Faison-Rosewick, L.L.C.*, 434 Md. 496, 511, 76 A.3d 1001, 1010 (2013) (quoting *Goodwich v. Nolan*, 343 Md. 130, 145, 680 A.2d 1040, 1047 (1996) (citation omitted); *see also Dep't of Human Res. v. Hayward*, 426 Md. 638, 646, 45 A.3d 224, 229 (2012); *Murrell v. Mayor of Baltimore*, 376 Md. 170, 193, 829 A.2d 548, 562 (2003) (quoting *Gisriel v. Ocean City Elections Bd.*, 345 Md. 477, 497, 693 A.2d 757, 767 (1997)). Because the grant of a writ of mandamus is "an extraordinary remedy," *see Hayward*, 426 Md. at 646, 45 A.3d at 229 (quoting *Ipes v. Bd. of Fire Comm'rs of Baltimore*, 224 Md. 180, 183, 167 A.2d 337, 339 (1961)), "the power to issue an extraordinary writ of mandamus is one which ought to be exercised with great caution." *Doering v. Fader*, 316 Md. 351, 361, 558 A.2d 733, 738 (1989) (citing *In Re Petition for Writ of Prohibition*, 312 Md. 305, 539 A.2d 664 (1988)).

Generally, a writ of mandamus is "appropriate where 'the relief sought involves the traditional enforcement of a ministerial act (a legal duty) by recalcitrant public officials,' but not where there is any 'vestige of discretion' in the agency action or decision." *Faison-Rosewick,* 434 Md. at 511, 76 A.3d at 1010 (quoting *S. Easton Neighborhood Ass'n v. Town of Easton*, 387 Md. 468, 477 n.3, 876 A.2d 58, 63 n.3 (2005)). Thus, a writ of mandamus will not be issued where the right is unclear of the party seeking it, *see, e.g.*, *Wilson v. Simms*, 380 Md. 206, 223, 844 A.2d 412, 423 (2004),

doubtful, *see, e.g.*, *Brack v. Bar Ass'n of Baltimore City*, 185 Md. 468, 474, 105, 45 A.2d 102, 105 (1945), or where the act sought to be compelled is within the discretion of the decision-maker against whom the writ is sought. *See Hayward*, 426 Md. at 646, 45 A.3d at 229 ("Ordinarily, mandamus does not lie where the action to be reviewed is discretionary or depends on personal judgment.") (citing *Goodwich*, 343 Md. at 145, 680 A. 2d at 1047); *see also Prince George's Cnty. v. Aluisi*, 354 Md. 422, 450, 731 A.2d 888, 903-05 (1999) ("[T]he process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, . . . this writ will not be granted.") (quoting *George's Creek Coal & Iron Co. v. Cnty. Comm'rs of Allegany Cnty.*, 59 Md. 255, 259 (1883)).

Other considerations relate to the effect of granting mandamus relief. For example, a writ of mandamus will not be granted where it "would introduce into municipal administration great confusion or disorder." *Kinlein v. Baltimore*, 118 Md. 576, 581, 85 A. 679, 681 (1912) (affirming the trial court's refusal to grant the writ of mandamus because "[t]o grant the remedy under the facts in this case would . . . be to establish a principle that would introduce very great disorder and confusion in the administration of the finances of the city, and subject it to unnecessary expense. . . . This would . . . hamper the conduct of city business, and subject the taxpayers to needless expense.") (citations omitted).

In summary, the writ of mandamus will not issue unless two requirements are met. First, the party against whom enforcement is sought must have an imperative, "ministerial" duty to do as sought to be compelled, *see, e.g.*, *Murrell*, 376 Md. at 196,

-23-

829 A.2d at 564, i.e., "a duty prescribed by law," *Freeman v. Local 1802, Am. Fed'n of State,* 318 Md. 684, 693, 569 A.2d 1244, 1248 (1990). *See, e.g.*, *Wilson*, 380 Md. at 226, 844 A.2d at 424-25 ("Because the statute does not require [plaintiff] to be granted back pay, . . . [plaintiff's] mandamus action does not lie 'to compel performance of a statutory duty.'") (quoting *Eck v. State Tax Comm'n*, 204 Md. 245, 255, 103 A.2d 850, 855 (1954)). Therefore, mandamus should not issue ordinarily when the act sought to be compelled of the official or administrative agency is discretionary in nature. In addition, the party seeking enforcement of that duty must have a clear entitlement to have the duty performed. The writ should not be issued where the right to the performance of the duty is doubtful. *Brack,* 185 Md. at 474, 45 A.2d at 105. Where the obligation to perform some particular duty is unclear or involves the exercise of any "vestige of discretion," or where the party seeking enforcement of the duty does not have a clear right to the performance of the duty it seeks to compel, the writ of mandamus will not be granted.

With these guiding principles in mind, we turn to determining whether the Act provides the FOP with a clear right to the Director's performance of the asserted imperative duty to designate an independent third party for consideration of the FOP's unfair labor practices complaint, regardless of the arbitrability of the subject matter of the complaint.

### 2. Statutory Construction.

Our canons of statutory construction require that we begin with the plain language of the statute in our endeavor to "ascertain and effectuate the intent of the Legislature." *Bowen v. City of Annapolis*, 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting

-24-

*Kushell v. Dept. of Nat. Res.* 385 Md. 563, 576-78, 870 A.2d 186, 193-94 (2005)); *see also Marriot Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444-45, 697 A.2d 455, 458-59 (1997) ("The cardinal rule of statutory construction is to ascertain and carry out the intention of the Legislature."). In interpreting statutes, we seek "to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Marriot Emps.,* 346 Md. at 444-45, 697 A.2d at 458-59 (quoting *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994)). Our interpretation should seek to avoid constructions that render any "word, clause, sentence or phrase" of a statute meaningless. *Montgomery Cnty. v. Buckman*, 333 Md. 516, 524, 636 A.2d 448, 452 (1994) (citations omitted). In *Marriot Employees,* we explained that, when a statute is ambiguous,

> courts must consider not only the literal or usual meaning of the words but also the meaning of words in light of the statute as a whole and within the context of the objectives and purposes of the enactment. Common sense must guide us in our interpretation of statutes . . . . [T]he Court may not insert or omit terms to make a statute express an intention not reflected in the statute's original form.

*Marriot Emps.*, 346 Md. at 444-45, 697 A.2d at 458-59 (citations omitted).

Under the Act, a covered employee or his/her bargaining agent may file an unfair labor practices complaint with an independent third party agency designated by the Director. BCC § 4-5-204(a)(1)(i). As such, the ability to file an unfair labor practice complaint is contingent upon the Director designating an independent third party agency with whom the complaint may be filed. The FOP argues principally that this requires us to interpret the Act as "mandat[ing]" the Director to refer every "unfair labor practice" complaint to an independent third party each time one is alleged. In the FOP's view,

therefore, BCC § 4-5-204(a)(1)(i) provides the FOP with a clear right to have the Director refer the complaint to arbitration without regard to the subject or content of the complaint. We disagree.

The phrase "designated by" in BCC § 4-5-204(a)(1)(i) identifies only with whom an unfair labor practice complaint may be filed.[16] Contrary to the FOP's wishful thinking, the Act does not place on the Director a ministerial duty to designate a third-party agency for **every** alleged complaint, and it does not rule out the possibility that the Director has some discretion in determining whether a matter should be referred to a third party agency.

We find this interpretation particularly persuasive when we compare BCC § 4-5-204(a)(1)(i), which does not require explicitly that the Director has a particular duty, with other provisions in the Act, which do require explicitly (such as by employing the term "shall") that the Director perform a particular duty.[17] In other subsections of the Act,

---

[16] Section 4-5-204(a)(1)(i) of the Act requires that the independent third party agency with whom a complaint is filed be "designated by the Director of Human Resources . . . ."

[17] Multiple examples of such provisions exist. For example, pursuant to a provision setting out election procedures in BCC § 4-5-307(b), entitled "Action of the Director of Human Resources," "[a]fter a decision on disputed employee inclusions or exclusions, if required**, if the Director of Human Resources determines that a question of representation exists in the representation unit, the Director shall** . . . ." (Emphasis added.)

Section 4-5-306(a) provides another example under the "Pre-Election Process": "**When the Director of Human Resources receives a petition, the Director shall provide notification** of the petition to: (1) The exclusive representative, if any, in the representation unit in which the petition is filed; and (2) [a]n employee organization that

(continued…)

-26-

which are not applicable to this case, but relate to the selection of an arbitrator, the term "shall" is used in conjunction with the duty required, clearly denoting who, how, and under what circumstances a particular party or parties must select an arbitrator.[18]

---

(…continued)

has notified the Director in writing that it has an interest in the representation unit in which the petition is filed." (Emphasis added.)

[18] Another example of the Act's use of explicit terms to define procedures that must be followed to select an arbitrator (not applicable to the present dispute) is BCC § 4-5-505(b), entitled "Selection of arbitrator":

(1) **Within 5 calendar days after receipt of the written notice as provided in subsection (a) of this section, the parties shall designate a member of the arbitration panel as the arbitrator.**

(2) **The parties shall** alternatively strike names and keep track of the order of the strike.

(3) **The party striking first shall** be determined by a coin toss.

(4) The last remaining arbitrator shall be deemed to be selected by the parties.

(5) The arbitrator shall be informed of the arbitrator's selection as soon as possible by the parties.

(6) If the arbitrator is unwilling or unable to serve as the arbitrator, the last previous strike from the arbitration panel shall be selected as the arbitrator.

(7) Until an arbitrator has been selected and the arbitrator is willing and able to serve, **the procedure set forth in this subsection shall be followed** through all names on the arbitration panel.

(Emphasis added.)

That having been said, had the Attendance Recognition Program in dispute been a subject matter that was negotiable **clearly** by the terms of the Act, the Director would have had an imperative duty to designate an independent third party agency and thereby to initiate the arbitration process. That is not the case here, however.

Because the Act does not refer explicitly to the Policies and Procedures Manual, we combed through the Act to determine if the Attendance Recognition Program is such a clearly (or even arguably) negotiable matter so as to mandate the Director's designating an independent third party agency. In so doing, we observe that the Act lays out two subject matters which trigger the parties' obligation to "negotiate in good faith": (1) "[w]ages, hours, and terms and conditions of employment" and (2) "[t]he drafting of a written memorandum of understanding . . . ." BCC § 4-5-310(a)(2); *see also* BCC § 4-5-201(a)(2) (providing that the purpose of the Act is to govern negotiations between the County and employee organizations with respect to "grievances and disputes relating to wages, hours, and other terms and conditions of employment"). Because the Attendance Recognition Program was never included in a memorandum of understanding, the only other negotiable category the policy may fall under is "terms and conditions of employment."

The FOP argues that the "funds to purchase a $100 U.S. Savings Bond" portion of the Attendance Recognition Program is within the scope of "terms and conditions of employment," (BCC § 4-5-310(a)(2)) and therefore, the unfair labor practice complaint was a "proper subject matter" that the Director was obligated to refer. Unlike "grievance," however, the phrase "terms and conditions of employment" is not defined

-28-

explicitly in the Act. Further, no provision in the BCC references the Policies and Procedures Manual or even hints that its terms may be subject to negotiation. BCC § 4-5-312(a) provides: "When the county administration and the exclusive representative in a representation unit reach an agreement on matters relating to wages, hours, and terms and conditions of employment, the items agreed to shall be included in a memorandum of understanding."[19]

---

[19] If the subject were a term in a memorandum of understanding ("MOU"), in addition to being in the Policies and Procedures Manual, the term would be a negotiable subject matter for which a "grievance" may be filed. In that instance, the Director would have a duty to initiate the arbitration process, as any term in a MOU is undisputedly within the scope of bargainable issues under the Act. Contrary to the dissent, this conclusion does not create a "catch-22."

The monetary incentive portion of the Attendance Recognition Program (which was not part of the MOU, but was implemented by the County under the express disclaimer that "[t]he County has the right to modify or discontinue any policy referenced in [the] manual at any time without prior written notification") is patently not a term or condition of employment. Had the FOP wished for the monetary incentive to become a "term and condition of employment," the FOP could have sought to negotiate for the policy to be *added* to the MOU (and thereby also for its reclassification as a "term and condition of employment"). That the FOP may seek to bargain collectively for its *addition* to the MOU, and thus also for its reclassification as a "term and condition of employment," however, does not mean that the FOP has the automatic right to negotiate over the County's decision to *discontinue* a policy that was never intended to be a "term and condition of employment."

If the FOP wishes to *add* the policy to its MOU with the County, then the FOP should seek negotiation over such an addition at the appropriate time. *See* BCC § 4-5-310 (providing that "[t]he county administration and the exclusive representatives are mutually obligated to . . . [m]eet at reasonable times *with respect to the county's budget submission date*") (emphasis added). Even if subsequent negotiations result in the addition of the policy—as a term and condition of employment that is set forth in the MOU for the next fiscal year, such a possibility does not preclude the County from discontinuing a policy that is patently not a term and condition of employment for the remainder of the current fiscal year.

(continued…)

-29-

If the FOP wished for the Attendance Recognition Program to become a patently negotiable subject as a "term and condition of employment," the FOP could have attempted to make it so by seeking to include the policy in a memorandum of understanding, as the purpose of the memorandum of understanding is to establish, in writing, "matters relating to wages, hours, and terms and conditions of employment," agreed upon by both parties. BCC § 4-5-312(a). Any attempt by the County to terminate or amend the policy, if the policy were included in a memorandum of understanding, would be subject unquestionably to negotiation.[20] There is no evidence in the record extract of this case that the FOP ever sought to include the Attendance Recognition Program in an MOU.

Had the County's refusal to negotiate in good faith involved a County policy that increased or decreased employees' wages based on their attendance or use of sick leave,

---

(…continued)

Here, the FOP seeks to negotiate the discontinuation or elimination of the monetary incentive portion of a program after the County announced its intent to terminate it, even though the program is not a term or condition of employment. The FOP did not argue that the policy should be *added* to the MOU. Although this distinction may appear subtle at first glance, the distinction is crucial so that the County may continue to have a way to implement—unilaterally—new (and potentially beneficial) policies and programs without the fear that the unilateral addition will have an indefinite life, created by the hurdle of potential negotiation prior to its discontinuation.

[20] The Act defines explicitly the "[e]ffect of termination of or amendment to the agreement" in BCC § 4-5-313(b), providing that "[i]f a party to a memorandum of understanding elects to terminate or amend the agreement. . . ," the party shall give written notice of its election to the other party. . ." before the current agreement expires and "[a]fter notification, the parties shall begin negotiations . . . ."

the dispute would fall clearly also within the Act's established negotiable issues. In that instance, the County would be obligated to negotiate the matter in good faith, and the Director would be obliged to designate an independent third party agency to investigate the complaint in accordance with dispute resolution procedures established in the Act. Here, however, the relatively nominal financial incentive aspect of the program to increase employee attendance, which was conditioned on a disclaimer excluding the policies in the manual as negotiable issues, patently does not fall into the same category.

### 3. Who Decides Arbitrability?

The FOP maintains that, even if the Court concludes the Act's arbitration provision to be unclear with regard to whether the Director must refer its complaint to an independent third-party agency, the precedent followed in Maryland has been to leave the question of arbitrability of the subject matter to the arbitrator. Although Maryland has strong precedent indeed establishing that principle, the precedent is confined primarily to cases interpreting motions to compel or stay arbitration, which is not the case here.

In deciding motions to compel or stay arbitration, the general policy in Maryland is to allow the question of arbitrability to go to the arbitrator in the first instance if it is unclear from the arbitration agreement whether the parties have agreed to submit a particular subject matter to arbitration or if the court, in addressing arbitrability, must consider the merits of the dispute. *Baltimore Cnty. Fraternal Order of Police, Lodge No. 4 v. Baltimore Cnty.,* 429 Md. 533, 551, 57 A2.d 425, 435 (2012) (hereinafter "*FOP 2012*"); *see also Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 159-60, 835 A.2d 656, 668 (2003) (explaining that, in deciding a motion to compel or stay

-31-

arbitration, "we may only consider whether an agreement to arbitrate the dispute at hand exists; we must not stray into the merits of any underlying disagreements"). We have recognized that, when "ruling on motions seeking to compel or stay arbitration or reviewing arbitration awards," a court's inquiry is restricted to determining whether a valid arbitration agreement, covering the matter in dispute, existed at the time of the dispute. *FOP 2012*, 429 Md. at 549, 57 A.3d at 434; *see also Allstate v. Stinebaugh*, 374 Md. 631, 642, 824 A.2d 87, 94 (2003) (reiterating the principle "that the role of the court in deciding a motion to compel arbitration is limited to determining one question: 'Is there an agreement to arbitrate the subject matter of a particular dispute?'" (quoting *Gold Coast Mall v. Lamar Corp.*, 298 Md. 96, 103-04, 468 A.2d 91, 95 (1983)).

The present case does not require the same limitation on our inquiry, but rather requires that we determine whether the requisites for a writ of mandamus were met. A court cannot grant a writ of mandamus, even though the issues involved relate to arbitration, where the provisions governing the duty sought to be compelled or the entitlement to that duty claimed is doubtful. *See, e.g.*, *Wilson,* 380 Md. at 224, 844 A.2d at 423 (explaining that mandamus requires "a clear and undisputable legal right and corresponding duty") (citing *Buchholtz v. Hill*, 178 Md. 280, 288, 13 A.2d 348, 352 (1940)). In other words, although ambiguity in the arbitration provision may have weighed, in effect, in the FOP's favor were we deciding a motion to compel or stay arbitration, a writ of mandamus demands certainty, and a court may not issue a writ of mandamus to order a party to perform anything except a "clear and undisputable" legal duty.

-32-

Although disputes involving arbitration agreements are resolved generally in favor of arbitration in cases of ambiguity, this principle applies primarily to the resolution of petitions to compel or stay arbitration. The extraordinary writ of mandamus, in contrast, cannot be issued in the presence of doubt. We can find no cases in which the policy of erring on the side of sending matters to arbitration is applied to interpreting a statute for purposes of whether a writ of mandamus should issue. Because a writ of mandamus requires that the duty sought to be compelled be certain and involve no discretion in its performance, and the right to have that duty performed to be clear and undisputable, any ambiguity in the Act's expression of these obligations and rights prevents a court from issuing a writ of mandamus.

Although we do not find helpful here the principle in our arbitration precedents favoring submission of arbitrability to the arbitrator, we do find another arbitration law principle instructive: "a party cannot be required to submit any dispute to arbitration that it has not agreed to submit." *Gold Coast Mall*, 298 Md. at 103, 468 A.2d at 95 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1353 (1960)). The disclaimer in Section 1 of the County's Policies and Procedures Manual expresses the County's intent to implement the Attendance Recognition Program only as a non-negotiable policy that would be subject to unilateral change by it. As we noted earlier, if the FOP disagreed with the status of the Attendance Recognition Program as a non-negotiable issue and sought to establish it as a "term and condition of employment," the FOP could have utilized the MOU bargaining process provided in the BCC. The County implemented the Attendance Recognition Program,

-33-

however, with the conspicuous intent to keep the policy separate from negotiable terms and conditions of employment. Accordingly, even if the principle of favoring arbitration in cases of ambiguity applied to this case, the County evidenced its intent not to add the Attendance Recognition Program to any existing arbitration agreement.

In conclusion, the language of the Employee Relations Act does not rule out the possibility of the Director of Human Resources exercising some discretion in referring complaints to an independent third-party agency when the content of the complaint falls patently outside permitted areas of negotiation. The FOP's request for a writ of mandamus compelling the Director to perform a duty not mandated by the statute, therefore, should have been denied. Accordingly, we shall reverse the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR THE ENTRY OF JUDGMENT IN FAVOR OF BALTIMORE COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Judge Watts joins the judgment only.

Circuit Court for Baltimore County
Case No. 03-C-11-010608
Argued: June 4, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 96

September Term, 2013

_____

BALTIMORE COUNTY
MARYLAND, et al.

v.

BALTIMORE COUNTY
FRATERNAL ORDER OF
POLICE, LODGE NO. 4

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Dissenting Opinion by McDonald, J.

_____

Filed: July 29, 2014

I would affirm the well-reasoned decisions of the Circuit Court and the Court of Special Appeals. The Circuit Court directed Baltimore County to comply with the procedures set forth in the County's Employee Relations Act for resolution of unfair labor practice complaints. For the reasons articulated by the Circuit Court on the record and elaborated on by the intermediate appellate court, that order was a straightforward application of the County law.

*Resolution of Unfair Labor Practice Complaints under the Employee Relations Act*

The Employee Relations Act of the Baltimore County Code ("BCC") authorizes the County administration to collectively bargain with employee unions – *i.e.*, to "negotiate in good faith with an exclusive representative ... relating to wages, hours, and other terms and conditions of employment..." BCC §4-5-201(a)(2); *see also* BCC §4-5-310(a). The results of such negotiations are to be incorporated in a memorandum of understanding ("MOU"), signed by representatives of management and of the employees. BCC §4-5-310(a)(2)(ii).

A failure to negotiate in good faith – by either the County administration or a union – is an "unfair labor practice" as defined by the Employee Relations Act. BCC §4-5-203(a)(4), (c)(3). The Act further sets forth the procedure for resolving a claim by one party that the other party failed to negotiate in good faith. If either the County or the union wishes to pursue such a claim – or any other claim of an unfair labor practice – it is to file a verified complaint with an independent third party agency that has been designated by the Director of Human Resources. BCC §4-5-204(a)(1). Note that the Employee Relations Act does not give the Director of Human Resources any role in reviewing or resolving a complaint filed

by either the County or the union – indeed, there is no indication in the law that the Director would even receive a copy of the complaint before it is submitted to the third party agency. Rather, the Director's sole function under the law is to designate the "independent third party agency" to receive and resolve the complaint.

The independent third party agency is then tasked, under the remaining provisions of the law concerning such complaints, to take any further action necessary to decide whether to dismiss the complaint or to order a remedy. BCC §4-5-204(b)-(d). Under these provisions, the third party agency could decide to dismiss a complaint on its face, or it could decide that further investigation, and perhaps a hearing, would be necessary to resolve the merits of the complaint. Under the Act, those decisions are entrusted to the independent third party agency – not the Director of Human Resources. *Id.*

Here the County has attempted to short-circuit this process. The union wishes to pursue an unfair labor practice complaint that the County failed to negotiate in good faith concerning the elimination of an attendance incentive payment. Although the Director initially began the dispute resolution process under the Employee Relations Act for that complaint,[1] he abruptly reversed course, prompting this litigation. In an action akin to a court clerk taking it upon himself without court involvement to reject the filing of a complaint because it failed to state a claim upon which relief could be granted, the Director refused to

---

[1]On September 14, 2011, the Director of Human Resources wrote to the FOP indicating his choice for an independent third party agency and seeking the FOP's assurance that it would pay its share of the cost of the process.

2

process the FOP's complaint as required by the County law. The Circuit Court properly ordered the County to follow its own law to resolve that complaint. It bears emphasis that the Circuit Court did *not* order the County to negotiate with the union concerning the attendance incentive payment. Rather, it simply ordered the County not to obstruct the unfair labor practice complaint resolution process in the Employee Relations Act. That process might well result in a determination that the unfair labor practice complaint is unfounded, as the County contends.

*Process v. Merits*

In my view, the Majority Opinion confuses the merits of the underlying complaint with the process for resolving that complaint. The Majority Opinion states that "had the Attendance Recognition Program ... been a subject matter that was negotiable **clearly** by the terms of the [Employee Relations] Act, the Director [of Human Resources] would have had an imperative duty to designate an independent third party agency and thereby to initiate the arbitration process." Majority slip op. at 28.[2] But whether the particular monetary benefit at issue should have been the subject of negotiation goes to the merits of the complaint that the County had refused to negotiate over a matter subject to collective bargaining. The

_____

[2] It could be that, given its reference to "clearly negotiable" matters, the Majority is confusing (1) the use of a third party agency (or arbitrator) to decide the merits of an unfair labor practice claim concerning what is negotiable with (2) the use of an arbitrator to resolve a negotiating impasse during collective bargaining over clearly negotiable matters. *See* BCC §4-5-401 *et seq.* (setting forth dispute resolution process involving mediators, fact finders, and arbitrators for impasses in bargaining).

County makes a persuasive argument why its elimination need not have been the subject of negotiations – as a unilateral management policy – and the third party agency might well have been persuaded by that argument. But it is not for the County – or for us – to short-circuit the process required under the Employee Relations Act.

*A Catch-22*

The Majority appears to argue that, in order to bring the topic of an unfair labor practice complaint concerning a failure to negotiate within the dispute resolution process, the FOP should make sure it is included in an MOU. Majority slip op. at 28-29. But this creates a Catch-22: Under this theory, in order to bring an unfair labor practice charge for failure to negotiate in good faith, one needs to make sure that the issue is part of the MOU; but an issue becomes part of the MOU only if it is a product of those negotiations; but if one party refuses to negotiate the matter, it will not become part of the MOU; and the aggrieved party cannot file an unfair labor practice complaint to compel negotiations on the item because the item is not part of the MOU, *ad infinitum*.[3]

_____

[3]The Court of Special Appeals recognized the circular nature of the County's argument in its opinion:

> ... [I]f we follow Baltimore County's train of thought, the County contends that because it believes it is under no duty to negotiate, no unfair labor practice was committed, and [the Director of Human Resources] was under no duty to designate an independent third party agency to review FOP's complaint. It appears that Baltimore County has placed the proverbial cart before the horse.

(continued...)

4

This is a bit backwards. The County is obliged under the Employee Relations Act to negotiate in good faith with respect to "wages, hours, and terms and conditions of employment." BCC §4-5-310(a)(2)(i). The results of that negotiation are to be embodied in an MOU. The MOU is the end result of negotiations; it does not circumscribe the universe of possible subjects of negotiation. The MOU by definition sets forth what the parties have agreed upon, *see* BCC §4-5-312(a); it does not necessarily indicate what they negotiated or attempted to reach agreement on, or what *could* be the subject of negotiation.[4] The fact that the parties have agreed to include an item in an MOU would, of course, make it difficult for either of them to claim that it was not a proper subject of negotiation. But the converse proposition – that the absence of an item from an MOU renders it ineligible for good faith negotiations – is certainly not true. And that is where the third party independent agency comes in.[5]

---

[3](...continued)

> ... Baltimore County's proposed interpretation, if adopted, would render the entire dispute resolution system outlined in the Employee Relations Act meaningless.

*Baltimore County v. Fraternal Order of Police, Lodge No. 4*, No. 0830 (June 21, 2013), slip op. at pp. 17-18.

[4]As the County law makes clear, good faith negotiation does not require that either party make any particular concessions in negotiations. BCC §4-5-310(b)(2).

[5]The confusion over these two propositions and the role of the third party agency is evident in a passage of the Majority opinion that is repeated in a footnote. On the one hand, the Majority refers to the discontinuance of the attendance incentive payment as "ostensibly" and "patently" non-negotiable. Majority slip op. at pp. 1, 29-30 & n.19. At the same time,

(continued...)

5

*Dispute Resolution under County Law v. Arbitration of a Grievance under an MOU*

In ruling that the Director was not obligated to designate a third party agency to resolve the issue of negotiability, the Majority relies on the principle that "a party cannot be required to submit any dispute to arbitration that it has not agreed to submit." Majority slip op. at 33.[6] It appears that the Majority has confused the dispute resolution process provided for complaints of unfair labor practices under the Employee Relations Act[7] with an arbitration process for grievances that might be part of an existing MOU.[8] The dispute resolution process at issue in this case is not the creature of an agreement between the County administration and the FOP, such as an MOU; it is required by County law. The third party agency designated by the Director serves the same function under County law to resolve complaints of unfair labor practices as the National Labor Relations Board serves under

---

[5](...continued)
it suggests that the FOP could negotiate to have the attendance incentive payment added to its MOU – a suggestion that assumes the item *is* negotiable. Majority slip op. at pp. 29-30 & n.19. It is not our role – or the Director's in this context – to reach either conclusion as to negotiability. That is the job of the third party agency.

[6]Unsurprisingly, both cases cited by the Majority for that proposition involved agreements to arbitrate, not dispute resolution processes created by law. *See Gold Coast Mall v. Lamarr Corp.*, 298 Md. 96, 468 A.2d 91 (1983) (arbitration clause in lease of real property); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 1960) (grievance arbitration provision in collective bargaining agreement).

[7]BCC §4-5-204(a)(1).

[8]Under BCC §4-5-314(a)(1), the parties to an MOU may agree upon an arbitration process for grievances and include it in the MOU. Unlike the dispute resolution process for unfair labor practices, the Employee Relations Act does not mandate or create that arbitration process; it merely authorizes the parties to agree to one.

6

federal law[9] and the State Labor Relations Board serves under State law.[10]  This is not a case in which the County administration is being compelled to do something it has not agreed to. Rather, the order of mandamus compelled the County administration to comply with County law.

*An Analogy:  The MCEA Case*

An analogy can be drawn to the situation in *Montgomery County Education Association, Inc. v. Board of Education of Montgomery County*, 311 Md. 303, 534 A.2d 980 (1987) ("*MCEA* case").  Under a State statute, the Montgomery County school system was authorized to engage in collective bargaining with the teacher's union – much as the Employee Relations Act authorizes the County administration to engage in collective bargaining with County employees in the present case.  Like the County Employee Relations Act, the statute governing collective bargaining for teachers in the *MCEA* case provided for resolution of disputes over whether a county school system had failed to negotiate in good faith.  Such complaints were to be resolved by an independent third party – the State Board of Education – an entity that was separate from the county school system and that was not itself involved in collective bargaining.

The *MCEA* case concerned a contention by the teacher's union, first made in 1970 and renewed in 1983, that the Montgomery County school system had failed to negotiate in good

---

[9]29 U.S.C. §160.

[10]Maryland Code, State Personnel & Pensions Article, §3-205(b)(3).

7

faith when it changed the school calendar and reclassified certain jobs without negotiating those changes with the union. In contrast to what happened in the present case, in both instances, the Montgomery County school system did not assert that it could somehow decide that an issue was non-negotiable. Rather, the dispute was referred to the State Board of Education – which, as noted above, served the same function as the independent third party agency in the present case. In the *MCEA* case, the State Board of Education decided the question of negotiability in the county school system's favor, both as to the 1970 complaint and as to the later 1983 complaint.. The 1983 determination was ultimately affirmed by the Court of Appeals in the decision cited above.

The same result might well occur here – *i.e.*, management might well prevail on the negotiability of the discontinuance of the attendance incentive payment in this case. But the County has attempted to short-circuit the process by not permitting the appropriate decision-maker to come to that conclusion.

*Conclusion*

In this case, the County refused to comply with the provision of the Employee Relations Act requiring that unfair labor practice charges be resolved by an independent third party agency. This Court has, in effect, assumed the function of the independent third party agency and resolved the merits of the FOP's complaint. Without purporting to comment on the merits of this particular allegation of an unfair labor practice myself, I am confident that

8

my colleagues in the Majority could discharge that function fairly. But it is simply not our role to do so.