*URS Corporation, et al. v. Fort Myer Construction Corporation*
No. 31, September Term 2016

**Appeals – Entry of Final Judgment – Separate Document Requirement – Waiver.**
The deadline for filing an appeal is computed from the time of the entry of final judgment.
As part of the entry of final judgment, a trial court is to incorporate the judgment in a
"separate document." The separate document requirement may be waived when doing so
does not prejudice a party and preserves a party's right to appeal. In that case, an appellate
court may consider an appeal that would otherwise be premature solely due to the absence
of a separate document incorporating the judgment. Maryland Rule 2-601.

**Sanctions – Maintaining or Defending Proceeding in Bad Faith or Without
Substantial Justification – Standard of Review.** Under Maryland Rule 1-341(a), a court
has discretion to award sanctions against a party that maintains or defends a proceeding "in
bad faith or without substantial justification." The court must make findings as to whether
a party acted in bad faith or without substantial justification. Those findings are subject to
review on appeal under a clearly erroneous standard. When a circuit court declined to find
bad faith and its fact findings did not support a conclusion that the plaintiff's arguments
were without substantial justification, it was an abuse of discretion for the court to award
sanctions under that rule. Maryland Rule 1-341.

Circuit Court for Montgomery County
Case No. 369478V
Argument: December 2, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 31

September Term, 2016

_____

URS CORPORATION, ET AL.

V.

FORT MYER CONSTRUCTION CORPORATION

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A.
  (Senior Judge, Specially
  Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: March 24, 2017

This appeal concerns the application of two rules. One rule is critical to the determination of appellate jurisdiction. The other sets the standard for imposing monetary sanctions when a litigant prosecutes a case in bad faith or without substantial justification.

Petitioner Maryland-National Capital Park and Planning Commission ("the Commission") contracted with Respondent Fort Myer Construction Corporation ("Fort Myer") to build a pedestrian bridge in accordance with design documents provided by the Commission. After running into several issues that delayed construction of the bridge, Fort Myer sued the Commission claiming that the design documents were at fault. The Commission impleaded Petitioner URS Corporation ("URS"), the engineering firm that created the design documents, on the theory that URS was contractually obligated to defend the Commission against Fort Myer's claims and would be liable for any damages. URS, in turn, countersued the Commission for contract payments that the Commission had withheld from URS.

Fort Myer's original complaint was eventually dismissed by the Circuit Court without prejudice, but the claims between the Commission and URS went to trial. URS and the Commission each prevailed on their claims against each other. Both the Commission and URS asked the court to award monetary sanctions against their common adversary – Fort Myer – under Maryland Rule 1-341 on the basis that the construction company had litigated its original complaint "without substantial justification." The Circuit Court did so.

All three parties appealed those rulings. The timing of the appeals of URS and the Commission, and its effect on appellate jurisdiction, became the dispositive issue for those appeals. The Court of Special Appeals initially dismissed the appeals by URS and the Commission for being *too late* and then, after reconsidering the matter, decided that their appeals were, in fact, *too early*. On the other hand, the intermediate appellate court determined that Fort Myer's appeal of the sanctions awards was *just right* – both temporally and substantively – and reversed the Circuit Court's sanctions awards.

URS and the Commission ask us to reverse the decision of the Court of Special Appeals on the sanctions awards, proposing both procedural and substantive grounds for doing so.

The procedural issue turns on the requirement of Maryland Rule 2-601 that a final judgment – ordinarily necessary to trigger appellate jurisdiction – be incorporated in a "separate document." In its revised opinion, the intermediate appellate court explained that the appeals by URS and the Commission were *too early* because the Circuit Court had not incorporated its judgment in favor of the Commission against URS in a separate document. Adopting that reasoning, URS and the Commission argue that Fort Myer's appeal of the sanctions awards was no more ripe for decision than their own appeals and, accordingly, the Court of Special Appeals should not have decided it.

The substantive issue turns on the merits of the Circuit Court's conclusion that Fort Myer had prosecuted its complaint "without substantial justification." The Court of Special Appeals found that conclusion to be unsupported by the factors cited by the Circuit Court and therefore clearly erroneous – which rendered the Circuit Court's award of sanctions an

2

abuse of discretion. URS and the Commission argue that, even if there was appellate jurisdiction of Fort Myer's appeal, the Court of Special Appeals should be reversed because the Circuit Court acted within its discretion in awarding sanctions.

We hold that the Court of Special Appeals properly exercised jurisdiction to decide the appeal of Fort Myer (and in fact had jurisdiction to decide those of URS and the Commission). Because the separate document requirement is intended to clarify the deadline for filing an appeal – not to create delay for its own sake – the separate document requirement may be waived when waiver does not prejudice appeal rights. Such is the case in this appeal. As for the sanctions awards against Fort Myer, we agree with the Court of Special Appeals that the Circuit Court's explanation of its reasoning did not support a finding that Fort Myer's pursuit of its claim was "without substantial justification."

# I

## Background

### A. *Proceedings in the Circuit Court*

*A Bridge Contract Beset by Delays*

In 2008, Fort Myer contracted with the Commission to build a pedestrian bridge over Veirs Mill Road in Montgomery County. The contract required Fort Myer to construct the bridge according to design documents that had been prepared for the Commission by URS under a separate, earlier contract between the Commission and URS. Several problems arose during construction, and completion of the bridge was delayed by more than four months.

3

*Fort Myer Sues the Commission*

Alleging that the construction issues and delay resulted from problems with the design documents, Fort Myer sued the Commission on October 12, 2012, in the Circuit Court for Montgomery County. In Count I of the complaint, Fort Myer asserted breach of contract and sought $876,822.03 in damages related to Fort Myer's increased costs and lost profits. In Count II, Fort Myer asked for a declaratory judgment requiring the Commission to pay Fort Myer $315,000 in contractual payments that the Commission was withholding as liquidated damages for the delays.

*The Commission Impleads URS; URS Counterclaims*

Some months later, on March 27, 2013, the Commission filed a third-party complaint against URS pursuant to Maryland Rule 2-332, seeking indemnification and contribution for any amount for which the Commission might be found liable to Fort Myer. The Commission also alleged that, under the design contract, URS had a duty to defend the Commission against Fort Myer's claims, and that URS had refused to do so.

URS answered the third-party complaint, asserting various defenses to the claims of both the Commission and Fort Myer.[1] URS also asserted a counterclaim against the Commission, alleging that the Commission owed URS $103,420, which was due for services URS had provided to the Commission, but which the Commission had withheld in light of the impending claim by Fort Myer.

---

[1] Rule 2-332(b) permits a third-party defendant to assert against the plaintiff any defenses that the third-party plaintiff has to the plaintiff's claim.

4

Thereafter, the parties engaged in pretrial discovery. Various discovery disputes arose, which resulted in requests for sanctions. The Circuit Court referred some of those disputes to a special master, and ultimately adopted the recommendations of the master, which did not include sanctions.

*Dismissal of Fort Myer's Complaint without Prejudice*

On February 26, 2014, after more than a year of litigation, URS moved to dismiss Fort Myer's complaint, or, in the alternative, for summary judgment. URS argued that Fort Myer's complaint was deficient under a State statute because Fort Myer had not filed a certificate of a qualified expert ("CQE") in conjunction with its complaint. *See* Maryland Code, Courts and Judicial Proceedings Article ("CJ"), §3-2C-01 *et seq.* That statute requires a plaintiff to file a CQE within 90 days of filing a malpractice claim against a licensed professional engineer.[2] If a plaintiff fails to file a timely CQE, the statute provides for dismissal of the complaint without prejudice. *See* CJ §3-2C-02(a).

Fort Myer initially opposed the URS motion. In its response, it noted that, given the statutory definition of "claim," the CQE requirement applies only when a claim is "filed ... *against* a licensed professional [engineer] or the employer, partnership, or other entity

---

[2] The statute pertains to malpractice actions brought against certain professionals – architects, interior designers, landscape architects, professional engineers, and land and property line surveyors – who are licensed under State law. In regard to professional engineers, the statute defines a "qualified expert" generally as "an individual who is a licensed professional [engineer] … knowledgeable in the accepted standard of care …" CJ §3-2C-01(d). The certificate is to contain a statement from the qualified expert "attesting that the licensed professional [engineer who was allegedly negligent] failed to meet the applicable standard of care." CJ §3-2C-02(a)(2)(i).

5

through which the licensed professional [engineer] performed professional services ...

[and] based on the licensed professional's alleged negligent act or omission in rendering

professional services...." CJ §3-2C-01(b) (emphasis added). Fort Myer argued that this

requirement did not pertain to its complaint because its claims were asserted against the

Commission, and not URS (which presumably employed the licensed professional

engineers who created the design documents at issue).

In the meantime, URS and the Commission filed several summary judgment

motions, seeking to dispose of the case on various legal grounds.[3]

On March 11, 2014, a few days after the summary judgment motions were filed and

shortly before the scheduled trial, Fort Myer withdrew its opposition to URS's motion to

dismiss, implicitly agreed that the CQE requirement applied to its complaint, and consented

to dismissal of its complaint without prejudice. In a subsequent filing and at two pretrial

hearings, counsel for Fort Myer explicitly agreed that the CQE statute applied and stated

that the court was required to dismiss its complaint without prejudice. Unsurprisingly,

URS and the Commission agreed that the complaint should be dismissed, but argued that

---

[3] URS asserted that it was entitled to judgment as a matter of law on Count I of the Fort Myer's complaint on the basis of the statute of limitations, as well as substantive Maryland law concerning the type of claims a contractor like Fort Myer was permitted to assert.

The Commission argued that it was entitled to judgment as a matter of law on Count II of the complaint because, among other things, Fort Myer had failed to identify in discovery an expert who could testify that the bridge design was defective. The Commission also filed a motion for summary judgment with respect to both counts of complaint, based on an argument that Fort Myer had previously released or waived its claims.

6

the dismissal should be *with prejudice*. (The Commission took the position that the CQE statute did *not* apply to Fort Myer's claim, but that its complaint should be dismissed with prejudice for other reasons set out in its summary judgment motion).

At a motions hearing on March 31, 2014, the Circuit Court decided to dismiss Fort Myer's complaint without prejudice. The third-party claim of the Commission against URS and URS's counterclaim against the Commission survived the dismissal of Fort Myer's complaint and remained pending, however.

*Sanctions Awards against Fort Myer*

URS and the Commission pursued an award of sanctions against Fort Myer with respect to the ill-fated complaint that had been dismissed without prejudice. Their respective motions were brought under Maryland Rule 1-341(a), which authorizes a court to require a party or the party's attorney to pay the costs of a proceeding and reasonable expenses, including attorney's fees, incurred by an adverse party when the court finds that a party acted "in bad faith or without substantial justification" in maintaining or defending a proceeding.[4]

In its motion, the Commission alleged, among other things, that Fort Myer had failed to retain expert witnesses despite representing that it had done so; that Fort Myer's witnesses failed to appear for properly-noticed depositions; and that Fort Myer proceeded with depositions of Commission witnesses despite "full knowledge that its complaint was

---

[4] Fort Myer filed its own motion for sanctions against the Commission for sanctions under Rule 1-341, which the court denied. Fort Myer has not appealed that ruling.

7

fatally flawed" because of the failure to file a CQE. The Commission sought recovery of the costs and attorney's fees incurred in defending against Fort Myer's complaint, which it computed to be $376,597.68. URS joined in the Commission's motion and sought recovery of its attorney's fees and costs incurred in the amount of $248,638.31. Fort Myer opposed the motions, arguing that its claims were made neither in bad faith nor without substantial justification.

The Circuit Court held a hearing on the motions for sanctions on April 28, 2014. Ruling from the bench at the hearing, the Circuit Court granted the motions of the Commission and URS. The court stated that its decision was not based on Fort Myer's failure to file a CQE, but rather on the "the posture of the entire case." The court then expressed its frustration with what it referred to as "blatant violations of the discovery rules" that had caused it to take the unique step, in its experience, of referring the discovery disputes to a special master.

In explaining its reasoning, the court stated that it was "not a question of whether [Fort Myer] had a right to pursue [its] case," but rather whether it had "a legal obligation to do it without fatal flaws." The court reiterated that it believed that the failure to file a CQE by itself would not merit sanctions, but that the failure to do so, when coupled with the discovery violations, the dismissal of the complaint on the eve of trial, and Fort Myer's subsequent motion seeking sanctions against the Commission, had led the court to conclude that a sanctions award against Fort Myer was appropriate. The court summarized that "there has been a [Rule] 1-341 violation taking place in its entirety, discovery violations, conduct of counsel, lacking substantial justification." While the court stated that there was

8

"lack of substantial justification," it conceded that Fort Myer's underlying claim "may be a cause of action in some other court, some other day, for some other judge to decide." The court explicitly declined to find that Fort Myer had acted in bad faith.

At the hearing the court awarded $376,597.68 to the Commission and $248,638.31 to URS – the total amounts requested by each. The court incorporated its oral ruling in a written order dated May 29, 2014, which included a finding that the "conduct of Fort Myer in maintaining [its] case was without substantial justification." The court clerk entered two separate written documents, each entitled Notice of Judgment, on June 2, 2014 – one memorializing the award in favor of URS and the other the award in favor of the Commission.

*Trial of Claims Between the Commission and URS*

In the meantime, the Commission and URS had continued to litigate their claims against one another. The Circuit Court held a bench trial on those claims on April 7 and 8, 2014. In an Order and Opinion issued on May 5, 2014, the Circuit Court decided in URS's favor on its counterclaim against the Commission and found that the Commission owed URS $103,420 with respect to the contract payments that the Commission had withheld from URS. The clerk entered a separate document in the record entitled Notice of Judgment in that amount.

In the same opinion, the Circuit Court also decided in the Commission's favor on its third-party claim against URS concerning the URS's contractual duty to defend the

9

Commission against Fort Myer's claims. The court did not compute the amount of damages at that time or enter a separate document incorporating its judgment.[5]

Some months later, on December 18, 2014, the Circuit Court held a hearing on the amount of damages owed by URS to the Commission on the duty-to-defend claim.[6] At that hearing, the Circuit Court ruled from the bench that URS owed the Commission $352,355.68 on that claim. That judgment was entered on the court's docket that same day in the following words: "Court enters judgment in favor of the defendant Maryland-National Capital Park and Planning Commission against the defendant URS Corporation-Maryland in the amount of three hundred fifty-two thousand, three hundred fifty-five dollars and sixty eight cents ($352,355.68)." However, no separate written document reflecting the judgment on this claim was filed in the record at that or any later time.

*Motion for Reconsideration of Sanctions Awards*

On November 10, 2014,[7] Fort Myer asked the Circuit Court to reconsider the awards of sanctions, arguing that its alleged bad acts during the litigation were not relevant to the

---

[5] On May 15, 2014 – before the Circuit Court had computed the damages on this claim – URS appealed the ruling that it had a duty to defend the Commission. After the Circuit Court scheduled a hearing on damages, URS asked the Court of Special Appeals to stay the proceedings. On September 25, 2014, the intermediate appellate court dismissed URS's appeal as premature, with leave to appeal from a final judgment.

[6] A different judge of the Circuit Court presided over this hearing, as the judge who had originally imposed sanctions had retired.

[7] Earlier, on June 4, 2014, Fort Myer had sought to appeal the sanctions awards. This appeal was consolidated with URS's May 15, 2014 appeal, which was dismissed by the Court of Special Appeals on September 25, 2014, as premature. *See* footnote 5 above.

question of whether its claim was filed or maintained "without substantial justification." Opposing this motion, the Commission and URS again pointed to the alleged discovery violations and the lack of expert witnesses and a CQE.

The Circuit Court took up the motion at the hearing on December 18, 2014 – the same hearing at which it determined the damages on the Commission's third-party claim against URS. In a subsequent order entered February 19, 2015, the court denied the motion for reconsideration, noting that "[n]o new facts or legal argument [were] presented in the motion" and "[n]o good reason [wa]s presented" to reconsider the previous decision.

## B.     *Proceedings in the Court of Special Appeals*

*Appeals Noted*

In March 2015, each party filed a notice of appeal. In their respective notices of appeal, Fort Myer indicated that it was challenging the award of sanctions and URS stated that it was challenging the Circuit Court's ruling that it owed the Commission a duty to defend.[8] The Commission also filed a notice of appeal but ultimately did not pursue its

---

[8] On March 9, 2015, Fort Myer filed a notice of appeal specifically citing the order granting the sanctions awards docketed on June 2, 2014 and the order denying its motion for reconsideration that had been docketed on February 19, 2015.

On March 19, 2015, the Commission filed a notice of appeal specifically citing various discovery rulings of the Circuit Court, an order of the court denying partial summary judgment in favor of the Commission against URS and the Circuit Court's judgment dated December 18, 2014 computing the damages awarded to the Commission against URS. The next day, the Commission also filed a "Notice of Cross-Appeal," which cited the same issues and which also corrected a typographical error in the caption of the original notice of appeal.

On March 20, 2015, URS filed a notice of appeal specifically citing the Circuit Court's Order and Opinion dated May 5, 2014 that ruled against URS on the duty-to-defend

appeal – *i.e.,* it did not file an appellant's brief, although it did file appellee briefs in response to briefs filed by Fort Myer and URS.

The appeals were consolidated in the Court of Special Appeals. Although no party had addressed the issue of timeliness of the appeals in their briefs, the issue was raised by the court at oral argument.

*April 1 Opinion*

On April 1, 2016, in an unreported opinion ("April 1 opinion"), the Court of Special Appeals dismissed URS's appeal as untimely. (The Commission's appeal was also dismissed as untimely, although the court acknowledged that the Commission had not pursued its appeal). However, the intermediate appellate court regarded Fort Myer's appeal as timely and reached the merits of that appeal, reversing the sanctions awards.

In the April 1 opinion, the court concluded that URS's appeal was late because its notice of appeal was filed in March 2015, which was more than 30 days after December 18, 2014 – the date that the Circuit Court had ruled from the bench and assessed $352,355.68 in damages in favor of the Commission, a ruling reflected on the docket that same day.

With respect to Fort Myer's appeal of the sanctions awards, the Court of Special Appeals held that the basis of the Circuit Court's ruling – that Fort Myer had conducted the litigation without substantial justification – was clearly erroneous. The court observed

issue and the judgment docketed on December 18, 2014 that assessed the amount of damages URS owed with respect to that claim.

12

that the Circuit Court's decision turned largely on Fort Myer's failure to file a CQE and Fort Myer's subsequent decision, shortly before trial, to agree to dismissal of its complaint for that reason. The intermediate appellate court stated that the question whether Fort Myer was required to file a CQE was "fairly debatable" under the case law, as evidenced by the fact that URS had raised the issue relatively late in the proceedings and that the Commission itself had initially taken the position that a CQE was not required.

The Court of Special Appeals found the Circuit Court's other "sweeping and nonspecific observations" insufficient to support a finding that Fort Myer had prosecuted its claim without substantial justification. While the Circuit Court had expressed its frustration with the discovery disputes, it had not identified specific violations. Moreover, the Court of Special Appeals observed, the discovery rules provide their own sanctions for such violations, but the Circuit Court had accepted the special master's recommendations and declined to impose any such sanctions. Finally, the intermediate appellate court also opined that, if the Circuit Court believed that Fort Myer's own motion for sanctions against the Commission was itself without substantial justification, the sanctions award in favor of the Commission should have been limited to the expenses incurred in defending that motion.

In light of its conclusion that the Circuit Court had been clearly erroneous in finding that Fort Myer acted without substantial justification, the Court of Special Appeals held that the trial court had abused its discretion in awarding sanctions under Rule 1-341(a). For the same reasons, it also held that the Circuit Court abused its discretion when it denied Fort Myer's motion to reconsider the sanctions awards.

13

*Motion for Reconsideration*

Ten days after the April 1 opinion was issued, URS filed a motion asking the Court of Special Appeals to reconsider its dismissal of URS's appeal. URS pointed out that, although the Circuit Court had announced its computation of the damages owed by URS to the Commission from the bench on December 18, 2014, that judgment had never been reduced to written form in a separate document as required by Maryland Rule 2-601(a). Because the deadline for filing an appeal is computed from entry of final judgment and because the separate document is ordinarily part of the entry of a final judgment, URS argued, its appeal was not late, because the "clock" that sets the deadline for filing an appeal had never actually begun to run. To rectify the situation, URS asked the Court of Special Appeals to rescind its dismissal and retain jurisdiction of its appeal. It also suggested that the court could regard the separate document requirement as waived.

*April 28 Opinion*

In response to the motion for reconsideration, the Court of Special Appeals withdrew its April 1 opinion and issued a partially revised unreported opinion on April 28, 2016 ("April 28 opinion"). In the April 28 opinion, the court agreed with URS that the absence of a separate document memorializing the December 18, 2014 judgment meant that final judgment had not yet been entered in accordance with Rule 2-601. It then dismissed the appeals by URS and the Commission "as not permitted by law."[9] The Court

---

[9] The court again stated that it was dismissing the Commission's appeal "for the same reasons" as it was dismissing URS's appeal, while also noting that the Commission had not filed an appellant's brief in support of its appeal.

of Special Appeals did not address URS's argument that it could retain jurisdiction because the separate document requirement had been waived. The April 28 opinion retained in full the portion of the April 1 opinion overturning the Rule 1-341 sanctions against Fort Myer.

## C.      *Petitions for Certiorari to Court of Appeals*

URS and the Commission each petitioned this Court for a writ of *certiorari*, which we granted. URS and the Commission challenge the intermediate appellate court's reversal of the sanctions awards against Fort Myer on two bases: (1) that the Court of Special Appeals lacked any jurisdiction to consider Fort Myer's appeal because there was not a final judgment – essentially tracking the reasoning of the intermediate appellate court when it dismissed their own appeals – and (2) that, even if there was a final judgment, the Court of Special Appeals erred in reversing the awards of sanctions against Fort Myer.

## II

## Discussion

For reasons outlined below, we agree with URS and the Commission that, in this case, the question whether there was an appealable final judgment for Fort Myer merits the same answer as whether there was an appealable final judgment for URS and the Commission. In our view, the answer is that there was appellate jurisdiction over all of these appeals. The only element lacking for purposes of entry of final judgment under Rule 2-601 was a separate document incorporating the Circuit Court's judgment in favor of the Commission against URS. In light of the absence of any objection, the Court of Special Appeals should have regarded the separate document requirement of Rule 2-601(a) as waived.

15

As to the second issue, we agree with the Court of Special Appeals that the Circuit Court's finding that Fort Myer maintained its action without substantial justification was clearly erroneous, and, correspondingly, that the Circuit Court abused its discretion when it awarded sanctions and denied the Fort Myer's motion to reconsider those sanctions.

## A.     *Whether There Was Appellate Jurisdiction*

URS and the Commission first contend that the decision of the Court of Special Appeals – expressed in both the April 1 opinion and the April 28 opinion – to overturn the sanctions awards against Fort Myer must be reversed because the intermediate appellate court lacked appellate jurisdiction over Fort Myer's appeal.  Appellate jurisdiction was lacking, they argue, because the Circuit Court failed to enter a final judgment in accordance with the Maryland Rules even though it had adjudicated all of the claims in the case. This is the same rationale that the Court of Special Appeals gave in its April 28 opinion for dismissing the appeals of URS and the Commission as premature.  Essentially, URS and the Commission argue that the Fort Myer appeal should have been dismissed for the same reason as their appeals.

We agree that the various appeals in this case should be treated the same for purposes of appellate jurisdiction.[10]  But we reach a different outcome than the Court of

---

[10] Had the final judgment on the merits of the various claims in the case been entered on a separate document prior to resolution of the sanctions awards at a later date, the sanctions awards might be separately appealable as a collateral matter.  *See Blake v. Blake*, 341 Md. 326, 335-37 (1996).  However, the sanctions awards were resolved in the Circuit Court prior to the filing of a separate document incorporating the judgment on the merits of the various claims.

16

Special Appeals. We conclude that the separate document required under Rule 2-601(a) was the only element lacking for an appealable final judgment with respect to any of these appeals, that this requirement was waived, and that the Court of Special Appeals properly had jurisdiction over Fort Myer's appeal. Therefore, we uphold that court's exercise of jurisdiction over Fort Myer's appeal of the Rule 1-341 sanctions.[11]

*The Final Judgment Rule*

As a general rule, under Maryland law, litigants may appeal only from what is known as a "final judgment." CJ §12-301 ("a party may appeal from a final judgment entered in a civil or criminal case by a circuit court"); *see also Waterkeeper Alliance, Inc. v. Maryland Dept. of Agriculture*, 439 Md. 262, 278 (2014). This requirement is designed to further the "long-established policy against piecemeal appeals." *Waterkeeper*, 439 Md. at 278. Although established by statute, this limitation on appellate jurisdiction is defined by rule and case law. *Harris v. David Harris, P.A.*, 310 Md. 310, 314 (1987) ("it is for the courts to define and give content to the meaning of final judgment"). Under our rules and case law, a final judgment exists only when the trial court intends an "unqualified, final disposition of the matter of the controversy" that completely adjudicates all claims against

---

[11] As noted earlier in this opinion, the Court of Special Appeals dismissed URS's own appeal as premature due to the lack of a separate document. URS did not petition for *certiorari* with respect to that ruling and, indeed, takes the position in its reply brief in this Court that the dismissal of its appeal is not before us. In any event, the April 28 opinion of the Court of Special Appeals left open the ability of URS to pursue a later appeal of the judgment against it and nothing in this opinion directs otherwise.

17

all parties in the suit, and only when the trial court has followed certain procedural steps when entering a judgment in the record. *Waterkeeper*, 439 Md. at 278-79.

*The Separate Document Requirement*

One of the procedural steps for entry of final judgment – the "separate document requirement" – requires the trial court to memorialize the judgment in a separate document that is signed by either the court clerk or the judge and entered in the docket. Rule 2-601(a) and (b);[12] *see also Hiob v. Progressive American Ins. Co.*, 440 Md. 466, 478-80 (2014). Maryland's version of the separate document requirement was based upon a similar

---

[12] At the time of the judgments in the Circuit Court and of the filing of the notices of appeal, the rule stated, in pertinent part:

**Rule 2-601. Entry of judgment.**

**(a) Prompt entry – Separate document.** Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

**(b) Method of entry – Date of judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of entry. That date shall be the date of the judgment.

The rule was subsequently revised, effective July 1, 2015, to take explicit account of the entry of judgment in an electronic case management system.

requirement in Rule 58 of the Federal Rules of Civil Procedure. *See Hiob*, 440 Md. at 473. Both rules clarify the deadline for noting an appeal. In Maryland, the "notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Maryland Rule 8-202. The separate document requirement is designed to eliminate confusion about what is the "entry of the judgment" from which the deadline is computed. *Hiob*, 440 Md. at 475-76. Clarity in this area is important, because uncertainty could result in an inadvertent loss of appeal rights. *Id.* at 476.

As is the practice in the federal courts, courts in Maryland "mechanically apply" the separate document requirement when determining the timeliness of an appeal. *Byrum v. Horning*, 360 Md. 23, 32 (2000) (quoting *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386 (1978)). That is, if the trial court has not complied with the separate document requirement of Rule 2-601(a), a litigant's appeal cannot be considered late, because the "clock" that sets the deadline has not started to run. *See, e.g., Hiob*, 440 Md. at 474-75.

### *Waiver of the Separate Document Requirement*

There are certain circumstances, however, when the separate document requirement may be waived in order to *preserve* an appeal, rather than eliminate it as untimely. Again, this Court has followed the lead of the United States Supreme Court in developing a concept of waiver of the separate document requirement when it is applied to preserve an appeal.

The leading Supreme Court decision is *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978). In *Bankers Trust*, the Supreme Court determined that the purpose of the federal separate document requirement – *i.e.,* "[c]ertainty as to timeliness" – would not be

advanced by dismissing an appeal where the separate document was "accidentally not ... entered" and where a technical application of the separate document requirement would only result in unnecessary delay. *Bankers Trust*, 435 U.S. at 385-86. The Supreme Court noted that, otherwise, upon dismissal of the appeal, the case would return to the trial court where that court would simply file the separate document from which a timely appeal would then be taken. The Supreme Court observed "nothing but delay would flow from" this series of actions and that "[w]heels would spin for no practical purpose." *Id.* at 385. This Court applied that reasoning in *Suburban Hospital, Inc. v. Kirson*, 362 Md. 140 (2000).

In *Suburban Hospital*, a jury returned a special verdict which, under Rule 2-601(a), should have been memorialized in a separate document entered in the record. 362 Md. at 151, 153-54. No separate document was created; the court clerk simply recorded the verdict on the docket and the parties appealed. *Id.* at 156. On appeal, no party objected to the absence of the separate document; in fact, the parties cooperated in an attempt to correct the deficiency in the trial court by having the circuit court judge "approve" and sign the special verdict sheet. *Id.* at 156 n.5. Although the signed verdict sheet did not satisfy Rule 2-601(a), this Court held that the separate document requirement of Rule 2-601(a) was waivable and that there was such a waiver in the case before it. *Id.* at 156.

Adopting the reasoning of the Supreme Court, the Court in *Suburban Hospital* determined that the separate document requirement of Rule 2-601(a) could be waived, at least where – as in the case before it – the trial court intended the docket entries made by the court clerk to be a final judgment and where no party objected to the absence of a

20

separate document after the appeal was noted. *Suburban Hospital*, 362 Md. at 154-56. The Court contrasted an earlier case, *Byrum v. Horning*, 360 Md. 23 (2000), where the Court had not recognized a waiver of the separate document requirement. *Suburban Hospital*, 362 Md. at 156-57. It noted that in *Byrum*, waiving the separate document requirement would have rendered the appeal untimely, but that in the case before it, waiver would, conversely, *preserve* the right to appeal. *Id.* at 157 (citing *Byrum*, 360 Md. at 32); *see also Hiob*, 440 Md. at 480.

Although in *Suburban Hospital* this Court did not "undertak[e] to set the outer limits of the availability of waiver of the separate document requirement in order to preserve an appeal in Maryland," 362 Md. at 156, further clarity was offered in *Taha v. Southern Management Corp.*, 367 Md. 564 (2002). There, an individual sued a property management corporation and two of its employees. After trial, the jury returned a verdict finding the corporation liable but absolving the two employees of liability. *Id.* at 566. A judgment order entered after trial reflected the verdict against the corporation, but there was neither a separate document nor any docket entries reflecting the verdicts in favor of the two employees. *Id.* at 566-67. On appeal, the corporation argued that the separate document requirement was waived because the circuit court, when ruling on another motion, stated on the record that it was "clear [from the] verdict" that the jury did "not find[] the individual employees responsible." *Id.* at 570. This Court, however, noting the lack of a separate document and the lack of docket entries reflecting a judgment as to the employees, refused to find such a waiver. *Id.* at 570-71.

21

*The Judgment in This Case*

In this case, there appears to be no dispute that the Circuit Court did not comply with the separate document requirement, and that this is the only element absent for entry of a final judgment. No party disputes the fact that the Circuit Court intended an "unqualified, final disposition of the matter in controversy" or that all claims against all parties have been adjudicated. Fort Myer's claim against the Commission was dismissed and the other two claims – the Commission's third-party claim against URS and URS's counterclaim against the Commission – resulted in awards of damages. The docket contains entries memorializing the dismissal of Fort Myer's complaint, the judgments against the Commission and URS following the trial on the third-party claim and counterclaim, and the sanctions awards against Fort Myer. Only the judgment against URS in favor of the Commission is not incorporated in a separate document. None of the parties objected to the absence of a separate document reflecting that judgment in either the Circuit Court or the Court of Special Appeals.[13]

---

[13] Although it is not entirely clear from its brief, the Commission appears to argue that a separate document reflecting the judgment in favor of the Commission against URS alone would not suffice to resolve this issue and that the separate document requirement may be satisfied only by a document that comprehensively addresses all claims in a case. Prior to the adoption of the separate document requirement, this Court recognized the concept of "piecemeal finality" or "springing finality" under which separate orders disposing of different claims would together be regarded as a final judgment as of the time of the last of those orders. *See Houghton v. County Commissioners of Kent County*, 305 Md. 407 (1986). With the adoption of the separate document requirement in 1997, there have arisen different views as to the continuing viability of the idea of "piecemeal finality." *Compare* P.V. Niemeyer, L.M. Schuett, & J.E. Smithey, Maryland Rules Commentary (4th ed. 2014) at 630-32 ("the rule now requires that *one* document will embody the entire judgment [and not] numerous separate documents") *with Hiob v. Progressive American Ins. Co.*, 212 Md. App. 734, 743-46 (2013), rev'd on other grounds, 440 Md. 466 (2014)

22

This case thus falls squarely into the framework identified in *Suburban Hospital.* We hold that the separate document requirement was waived and that the Court of Special Appeals had jurisdiction to consider the appeals of the Circuit Court's judgment. No party objected to the absence of a separate document in the Circuit Court or in the Court of Special Appeals. When URS asked that court to reconsider its initial dismissal of its appeal, URS specifically argued that the requirement was waived and no party contradicted that assertion. Unlike the situation in *Taha*, there is a written opinion explaining the court's decision on the third-party claim and the clerk entered judgment against URS on the docket, including the specific amount of damages. *See Baltimore County v. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 561-66 & n.13 (2014) (distinguishing *Taha* in a case involving written order and docket entry). It is evident that the Circuit Court "clearly intended [that entry] to be a final judgment." *Suburban Hospital*, 362 Md. at 156.

Were we to hold that the requirement was not waived, we would remand to the Court of Special Appeals, that court would then remand to the Circuit Court, and the Circuit Court would simply file and enter the separate judgment, from which a timely appeal would then be taken. This would be a classic example of wheels spinning for no practical purpose.

(concluding that *Houghton* remains "good law"). Given our holding that the separate document requirement was waived in this case, the issue of how comprehensive a separate document need be is an academic question that we need not resolve here. *See Hiob*, 440 Md. at 501-3.

We hold that the separate document requirement has been waived, and that the Court of Special Appeals had appellate jurisdiction to decide Fort Myer's appeal.[14]

The determination as to whether appellate jurisdiction exists is not always easy. In this case, the litigants have been told, in succession: you're too late; you're too early; and maybe you're early, but it's okay. It may be the product of the intersection of a statutory limitation on appellate jurisdiction, rules designed both to implement the statutory limitation and to eliminate land mines on the way to appellate review, and an appellate court that is scrupulous about acting only when it properly has jurisdiction. Some confusion is perhaps inevitable. This bottom line in this case is that the Court of Special Appeals had appellate jurisdiction to decide the substantive issue that it decided.

## B. *Whether the Awards of Rule 1-341 Sanctions Were Clearly Erroneous*

The Circuit Court found that Fort Myer had maintained its case "without substantial justification" and, accordingly, imposed sanctions in favor of the Commission and URS

---

[14] Before this Court, Fort Myer argued that the April 28 opinion – specifically, that court's decision to consider the merits of the Rule 1-341 sanctions awards – should be interpreted to mean the intermediate appellate court implicitly exercised its discretion under Rule 8-602(e)(1)(C) to enter a final judgment on the Rule 1-341 sanctions issue on its own initiative. Under Maryland Rule 8-602(e)(1)(C), an appellate court has discretion to enter a final judgment on its own initiative if a circuit court could have entered a final judgment under Maryland Rule 2-602(b). Rule 2-602(b) authorizes a circuit court to direct entry of a final judgment as to fewer than all claims and parties when it determines that "there is no just reason for delay."

The Court of Special Appeals did not mention Rule 8-602(e)(1)(C) or Rule 2-602(b) in its April 28 opinion. Because we resolve this issue on the basis of waiver, we offer no opinion on the suggestion that an appellate court might implicitly invoke Rule 8-602(e)(1)(C).

24

under Rule 1-341(a). The Court of Special Appeals overturned this finding as clearly erroneous. In light of that conclusion, the intermediate appellate court further held that it was an abuse of discretion for the Circuit Court to award sanctions under the rule and that it was also an abuse of discretion to deny the motion to reconsider the sanctions awards. We agree with the Court of Special Appeals.

*Maryland Rule 1-341(a)*

Maryland Rule 1-341(a) allows a court to impose sanctions if a party prosecutes a claim "in bad faith or without substantial justification." That rule provides:

> **(a) Remedial Authority of Court.** In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

To impose sanctions under Rule 1-341(a), a court must make an explicit finding that a party conducted litigation either in bad faith or without substantial justification. *Zdravkovich v. Bell Atlantic-Tricon Leasing, Corp.*, 323 Md. 200, 210 (1991). This finding should be supported by a "brief exposition of the facts upon which [it] is based." *Talley v. Talley*, 317 Md. 428, 436 (1989). Such a finding by a trial court will be upheld on appellate review unless it is clearly erroneous or involves an erroneous application of law. *Inlet Associates v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267 (1991). If a trial court makes the requisite finding, it must then determine whether the party's conduct merits the assessment of costs and attorney's fees – a determination that will be upheld on appellate review unless found to be an abuse of discretion. *Id.* at 267-68.

25

This case involves review of a trial court's finding that a party acted without substantial justification. Under the case law construing Rule 1-341, a claim or litigation position is "without substantial justification" if it is not fairly debatable,[15] not colorable,[16] or not within the realm of legitimate advocacy.[17] That standard is not met if a party has a "reasonable basis for believing that [its] claims [will] generate an issue of fact for the fact finder."[18] Nor is it met when a party advances an arguable interpretation of an ambiguous statute, even if ultimately rejected by a court.[19]

*Application to this Case*

In concluding that Fort Myer had prosecuted its action without substantial justification, the Circuit Court recited a host of factors, somewhat vaguely, as the basis for its decision.[20] We agree with the Court of Special Appeals that the factors cited by the Circuit Court do not support a finding that Fort Myer acted without substantial justification

---

[15] *Newman v. Reilly*, 314 Md. 364, 380-81 (1998).

[16] *Yamaner v. Orkin*, 313 Md. 508, 516 (1998).

[17] *Inlet Associates*, 324 Md. at 268.

[18] *Id.*

[19] *Newman*, 314 Md. at 381.

[20] The Circuit Court explicitly declined to make a finding of bad faith. Nevertheless, before us, the Commission argues that the Circuit Court's statements at the April 28, 2014, hearing should be interpreted as a finding of "bad faith." The Commission reads the Circuit Court's stated decision "not ... to address *the* issues of bad faith" (emphasis added by the Commission) as an implicit finding, of sorts, of bad faith. We decline to give the court's comments this interpretation, both because such an interpretation is strained and because a bad faith finding for purposes of Rule 1-341 must be "explicit." *Zdravkovich*, 323 Md. at 210-11.

and that the Circuit Court's finding on that score was clearly erroneous. Given that the requisite finding was clearly erroneous, the Circuit Court abused its discretion when it awarded costs and attorney's fees to the Commission and URS and when it denied Fort Myer's motion to reconsider those awards.

As the Court of Special Appeals explained – and as the Circuit Court appeared to acknowledge at the April 28, 2014, hearing – the legal issue "at the heart of the sanctions motion" was "fairly debatable." In its complaint, Fort Myer attributed the delays in construction of the bridge to various factors beyond its control, most notably deficiencies in the design documents provided to it by the Commission. URS and the Commission both contended, in various ways, that Fort Myer had failed to support that claim with necessary expert opinions and that this failure revealed the absence of any merit to its claim. In the Commission's words, the case was "nothing more than a shake-down seeking to extract a settlement on a claim that Fort Myer knew never had any merit." However, the Circuit Court explicitly rejected this assessment. It specifically noted during the April 28, 2014, hearing that Fort Myer had a right to pursue its contentions and that, despite the dismissal, Fort Myer's claim "may be a cause of action in some other court, some other day, for some other judge to decide."

The Circuit Court focused less on the substantive merits – or lack thereof – of Fort Myer's claim than on the formal statutory requirement that plaintiffs in certain cases must

27

file a CQE, on Fort Myer's alleged failure to designate an expert witness,[21] and on the various discovery disputes that had arisen.

As the Court of Special Appeals noted, it was a "fairly debatable legal question" whether or not Fort Myer was required to file a CQE with its complaint. Under the statute, the CQE requirement applies only to a claim filed against "a licensed professional [engineer] or the employer, partnership, or other entity through which the licensed professional [engineer] performed professional services" based on the professional engineer's alleged negligent acts or omissions. CJ §3-2C-01. Fort Myer's complaint alleged breach of contract – not negligence – and was brought against the Commission, which is neither a "licensed professional" nor arguably an "employer, partnership, or other entity through which [a] licensed professional [engineer] performed professional services." In the Circuit Court, the Commission itself argued that these distinctions took the case outside the CQE statute. There was, at the very least, a colorable argument that a CQE was not required. *See also Heavenly Days Crematorium, LLC v. Harris, Smariga and Associates, Inc.*, 433 Md. 558 (2013) (holding that CQE not required when complaint did not allege negligent acts or omissions by a licensed professional engineer, but dismissal

---

[21] Although the Commission moved for summary judgment on the basis of Fort Myer's alleged failure to identify any expert witnesses who could testify about the alleged professional negligence, the Circuit Court ultimately based its decision to dismiss Fort Myer's complaint due to the lack of a CQE, not any lack of designated expert witnesses. The Circuit Court never formally found that Fort Myer lacked the requisite expert witnesses.

might be required if it became evident that the alleged negligence related to a licensed engineer).

In addition to the absence of a CQE, the Circuit Court also repeatedly alluded to "discovery violations" committed by Fort Myer. URS and the Commission had earlier sought sanctions against Fort Myer under the discovery rules, in particular, Maryland Rules 2-432(a) and 2-443. The Circuit Court had referred those disputes to the special master who did not include sanctions in his reports, which were approved by the Circuit Court. Indeed, the Circuit Court never found a specific discovery violation or imposed any sanctions under the discovery rules.

Finally, while the Circuit Court alluded to the motion for sanctions filed *by* Fort Myer *against* the Commission,[22] it never explicitly found that this motion was "without substantial justification." As the Court of Special Appeals noted, even if the court's vague reference to that motion sufficed as a finding under Rule 1-341(a), the sanctions awards were calculated to compensate URS and the Commission for their defense of the litigation from its outset and not just Fort Myer's motion for sanctions.

In sum, there is no factual support for the Circuit Court's finding that Fort Myer "maintain[ed its] case . . . without substantial justification." To the contrary, the Circuit Court appeared to believe that the underlying breach of contract claim was colorable.

---

[22] During its ruling, the Circuit Court stated: "The suggestion after this case was dismissed[,] Fort Myer files a motion for sanctions against the Commission. I'm speechless. . . . All of the money associated with this case in terms of experts and discovery and attorneys' fees, and you file a motion for sanctions against the Commission."

Moreover, the applicability of the CQE requirement was "fairly debatable." In that context, the Circuit Court's apparent finding that Fort Myer was responsible for discovery violations did not support sanctions under Rule 1-341 – as opposed to sanctions under the discovery rules that the court had previously declined to impose. The finding that Fort Myer had pursued its claim without substantial justification was clearly erroneous, and the Circuit Court abused its discretion when it imposed monetary sanctions and when it denied Fort Myer's motion to reconsider that decision.

## III

## Conclusion

For the reasons stated above, we affirm the decision of the Court of Special Appeals. We hold that the separate document requirement of Rule 2-601 was waived, that there was a final judgment supporting appellate jurisdiction, and that that the Court of Special Appeals properly entertained Fort Myer's appeal. With respect to the substantive issue that the Court of Special Appeals decided, we agree that the Circuit Court's finding that Fort Myer maintained this case "without substantial justification" was clearly erroneous. Accordingly, we also agree that the Circuit Court abused its discretion when it awarded sanctions under Rule 1-341 and when it denied Fort Myer's motion for reconsideration on that issue.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE EVENLY DIVIDED BETWEEN PETITIONERS AND RESPONDENT.**