*Wireless One, Inc. v. Mayor and City Council of Baltimore City*
No. 1852 September Term, 2017


**REAL PROPERTY – URBAN RENEWAL – RELOCATION EXPENSES.** Under Maryland Code (1974, 2015 Repl. Vol.), Real Property Article ("RP"), § 12-205, certain persons who are displaced as a consequence of real property being acquired for redevelopment are entitled to compensation for their relocation expenses. But RP § 12-201(e)(2)(iii) provides: "'Displaced person' does not include: . . . (iii) A person who leases from the displacing agency after the displacing agency takes title to the real property." Consequently, a person is not eligible for relocation assistance under this statute if the "displacing agency" had already taken title to the real property prior to the time the person who is required to relocate leased space in the property that is being redeveloped.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1852

September Term, 2017

WIRELESS ONE, INC.

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE CITY

Meredith,
Arthur,
Beachley,

JJ.

Opinion by Meredith, J.

Filed: December 21, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

From 2004 until February 8, 2017, Wireless One, Inc. ("Wireless"), appellant, leased space in the Cross Street Market ("the Market") in Baltimore City from the owner of that facility, Mayor and City Council of Baltimore ("the City"), appellee. As of 2016, Wireless occupied the space pursuant to a month-to-month lease. In late 2016, a rental agent for the Market advised Wireless that its business did not fit into the long-term vision for the Market, and that it should pursue other options. Wireless vacated the Market on February 8, 2017, and thereafter sued the City, in the Circuit Court for Baltimore City, claiming damages for being displaced.[1] The circuit court granted the City's motion to dismiss, and this appeal followed.

## QUESTIONS PRESENTED

Wireless presents the following questions for our review:

1.     Was Wireless a displaced person pursuant to Real Property Article 12-201[(e)](1)?

2.     Did Wireless state a cause of action for an unconstitutional taking?

For the reasons set forth below, we shall affirm the circuit court's judgment.

## FACTS AND PROCEDURAL BACKGROUND

The Cross Street Market was established in Baltimore City in 1847. At all times since 1847, the Market has been owned and operated by the City. Since 1994, Baltimore Public Markets Corporation ("Markets Corporation") has assisted the City in managing and operating the Cross Street Market and other markets in Baltimore.

---

[1]     The complaint also named as a defendant Baltimore Public Markets Corporation, but made no independent claim against that entity.

In 2004, Wireless leased space in the Market to operate a stall for its retail business of providing sales and service of cellular phones. Wireless occupied the space pursuant to various leases, but, as of 2016, was occupying the space pursuant to a month-to-month lease.

On November 9, 2016, the City and its management company for the Market entered into a Management Agreement with Caves Valley Partners and CSM Ventures, LLC, a subsidiary of Caves Valley Partners, to operate the Market and undertake redevelopment of the Market. The Management Agreement empowered CSM Ventures, LLC, to lease portions of the Market and to terminate existing tenancies.

On December 21, 2016, a Caves Valley Partners representative, Nick Alevrogiannis, sent an e-mail to occupants of the Market, including Wireless, with an update on plans for redeveloping the Market. The e-mail reads, in part:

> [O]n January 9th, most of you will receive a Letter of Intent, along with current draft space plans for the new market, for your review and consideration as prospective tenants. There are a very limited number of tenants who we know will not fit in the plans. Those tenants have been informed that they should pursue other options going forward. . . .
>
> * * *
>
> At the merchants meeting last month, Arsh Mirmiran from CSM Ventures promised that the current market would continue to operate until at least April 1, 2017. I would like to reiterate that and let you know that it will likely continue for a bit longer than that. Once we know an official date, we will let you all know.
>
> * * *
>
> Regardless of whether or not we are able to reach agreement for you to be part of the redeveloped market, we will work with you and the Baltimore Public Markets Corporation to provide options for temporary

2

and/or permanent relocation spaces. These spaces would be in either Lexington Market or Hollins Market, both of which a[re] going to be refreshed, as well. The Markets Corp. has confirmed that there is adequate space to accommodate all current tenants of Cross Street Market, should you so choose. If neither of those options is of interest, I can work directly with you to find you space closer to Cross Street, either in currently vacant storefronts or in existing space that may become available.

\* \* \*

As I mentioned, please let me know if you'd like any additional information. All of this is still a work in progress and we don't have all the answers yet, but we are methodically getting there and we appreciate your continued interest and patience.

Wireless alleges that it was informed in December 2016 that it would not fit in the plans for the redeveloped market, and that it should make plans to leave. Wireless asked for, and was granted, leave to terminate its month-to month lease, and, on February 8, 2017, Wireless vacated the Market, but left behind fixtures such as counters and built-in shelves.

On June 2, 2017, Wireless filed a complaint against the City and Markets Corporation in the Circuit Court for Baltimore City, alleging that Wireless was a "displaced person" under Maryland Code (1974, 2015 Repl. Vol.), Real Property Article ("RP") § 12-201(e)(1), and that Wireless was entitled to receive compensation for relocation expenses pursuant to RP § 12-205(a).[2]

---

[2] RP § 12-205(a) provides:

(a) Whenever a program or project undertaken by a displacing agency will result in the displacement of any person, the displacing agency shall make a payment to the displaced person, on proper application as approved by the displacing agency for:

continued…

3

The City (and Markets Corporation) filed a Motion to Dismiss, or, in the alternative, for Summary Judgment, arguing, *inter alia*, that Wireless did not meet the statutory definition of "displaced person" because of the exemption set forth in RP § 12-201(e)(2)(iii). On September 11, 2017, the circuit court held a hearing and then granted the motion to dismiss based upon the exemption in RP § 12-201(e)(2)(iii). On September 20, 2017, Wireless filed a motion to alter or amend, which was denied on October 19. On November 14, 2017, Wireless timely appealed. A petition for writ of certiorari was denied by the Court of Appeals on April 20, 2018.

## STANDARD OF REVIEW

We explained how we review the grant of a motion to dismiss in *Pulliam v. Motor Vehicle Admin.*, 181 Md. App. 144, 153 (2008), as follows:

> We review the grant of a motion to dismiss *de novo*. We examine the complaint and determine whether it states a legally sufficient cause of action. We must assume the truth of all the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from them, and we review the complaint in the light most favorable to the

_____

continued…
> (1) Actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
> (2) Actual direct loss of tangible personal property as a result of moving or discontinuing a business or farm operation, but not exceeding an amount equal to the reasonable expenses that would have been required to relocate the personal property, as determined by the agency;
> (3) Actual reasonable expenses in searching for a replacement business or farm; and
> (4) Actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site as determined by the displacing agency, but not to exceed $60,000.

4

non-moving party. Dismissal is proper only if the complaint would fail to provide the plaintiff with a judicial remedy.

(Citations omitted.)

With respect to consideration of information outside of the complaint, we said in

*Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 175 (2015):

> We agree, as a general proposition, that where matters outside of the allegations in the complaint and any exhibits incorporated in it are considered by the trial court, a motion to dismiss generally will be treated as one for summary judgment. *See, e.g., Worsham v. Ehrlich*, 181 Md. App. 711, 722, 957 A.2d 161 (The trial court has "discretion to convert a motion to dismiss to a motion for summary judgment by considering matters outside the pleading."), *cert. denied*, 406 Md. 747, 962 A.2d 373 (2008). Where, however, a document such as the [agreement referenced and relied on in the complaint] merely supplements the allegations of the complaint, and the document is not controverted, consideration of the document [filed as an exhibit to the motion to dismiss] does not convert the motion into one for summary judgment. *See Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 710, n.4, 110 A.3d 784 (2015) (although the plaintiff did not attach a Deposit Account Agreement to his complaint, "he expressly referred to it and repeatedly alleged that its disclosures that did not satisfy the" Consumer Protection Act; thus, the court properly regarded the agreement as "simply supplementing the allegations in the complaint."); *Smith v. Danielczyk*, 400 Md. 98, 105, 928 A.2d 795 (2007) (because there was no dispute regarding the extraneous material appended to defendant's motion to dismiss, and plaintiff did not controvert the defendant's factual averments, appellate court treated the extraneous materials "as simply supplementing the allegations in the complaint"). Accordingly, the circuit court's consideration of the [agreement filed with the motion to dismiss] did not convert the motion to dismiss into a motion for summary judgment.

Here, the motion court cited Maryland Rule 2-322(b), and discussed "whether a motion to dismiss should be granted." The court's order stated: "Plaintiff's Complaint is DISMISSED." We conclude that the court did not treat the motion as a motion for summary judgment, but dismissed the complaint pursuant to Rule 2-322(b)(2). We will review that ruling *de novo*.

5

Wireless asserts that it is a "displaced person" and entitled to "moving and relocation benefits" pursuant to RP §§ 12-201 *et seq.*, and that the City's failure to pay such expenses resulted in an unconstitutional taking of Wireless's property. Wireless contends that its complaint stated a viable claim for relief pursuant to RP § 12-205(a), and argues in its brief:

> The whole point of the law is to address compensation when the government undertakes a project. Here the question is whether Wireless is entitled to relocation benefits as a result of a rehabilitation project. Real Property [§ 12-201(e)(1)(i)(2)] . . . . In other words, the design of the statute is to deal with the project and the benefits to those affected by the project. The Supreme Court has held that the earlier version of the law dealt with displacement for a governmental project. Alexander v. United States Department of Housing and Urban Development, [441 U.S. 39, 59 (1979)]. This remains the focus of the law.

But the City responds that this is not a case in which it exercised the power of eminent domain or instituted condemnation of Wireless's property, and it is not disputed that the City has owned the subject property since 1847. Because the City --- which is alleged to be the displacing agency here --- took title to the real property being redeveloped long before Wireless became a tenant, the City contends that it is exempt from paying Wireless relocation compensation under RP § 12-205(a). The City bases its claim of exemption on RP § 12-201(e)(2)(iii), which provides:

> (2) "**Displaced person" does not include**: . . . (iii) **A person who leases from the displacing agency after the displacing agency takes title to the real property**, or any person other than a person who was an occupant of such property at the time it was acquired who occupies the property on a

6

rental basis for a short term or period subject to termination when the property is needed for the program or project.

(Emphasis added.)

The motion court agreed with the City's argument that the exemption provided in

RP § 12-201(e)(2)(iii) applies, and explained:

> In the instant case, it is undisputed that the Market was established by Baltimore City in 1847, and has been owned and operated by Baltimore City since its inception. Plaintiff cannot overcome the plain language of the Md. Code Ann., Real Prop. § 12-201(e)(2)(iii), which specifically exempts "[a] person who leases from the displacing agency *after the displacing agency takes title to the real property*." Plaintiff's lease was executed in 2004, many years after Baltimore City acquired title to the Market. Additionally, the Management Agreement between Baltimore City and Caves Valley Partners did not transfer title to the Market; rather, the Management Agreement merely gave Caves Valley Partners the ability to operate, manage, and redevelop the Market. Thus, Plaintiff has failed to state a claim for relocation and moving expenses pursuant to Md. Code Ann., Real Prop. § 12-201.

We agree with the motion court's analysis.[3]

---

[3] We note that the format of the court's judgment did not strictly comply with the requirement of Maryland Rule 2-601(a)(1), which mandates: "Each judgment shall be set forth on a separate document and include a statement of an allowance of costs as determined in conformance with Rule 2-603." Here, the court's judgment of dismissal appears on the sixth page of the written opinion explaining the court's reasoning. The Court of Appeals discussed the rationale for adopting the rule requiring that each judgment be set forth on a separate document in *Byrum v. Horning*, 360 Md. 23, 26 (2000), noting that it was intended to "remedy the 'difficulty [which] ha[d] arisen, chiefly where the court has written an opinion or memorandum containing some apparently directive or dispositive words, e.g., "the plaintiff's motion [for summary judgment] is granted,"' . . . ." It was often difficult for the clerk to determine the precise nature of the judgment and the wording that needed to be included in the docket entry reflecting the court's judgment. There were also issues relative to determining the effective date of the judgment. The separate document rule, now set forth in Rule 2-601(a)(1), "'eliminates these uncertainties by requiring that there be a judgment set out on a separate document --

continued…

7

**II.**

Appellant concedes in its brief that its "case for an unconstitutional taking depends on whether the City wrongfully denied Wireless moving and relocation expenses." We have concluded, for the reasons set forth above, that the City did not wrongfully deny Wireless moving and relocation expenses, and therefore, we also conclude that the motion court did not err in ruling that Wireless "has failed to state a claim for an unconstitutional taking."

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

_____

continued…

- distinct from any opinion or memorandum --- which provides the basis for the entry of judgment.'" *Id*. at 26-27.

Nevertheless, the separate document requirement is *not* jurisdictional, and strict compliance may be waived "where a technical application of the separate document requirement would only result in unnecessary delay." *URS Corporation v. Fort Myer Construction Corporation*, 452 Md. 48, 67 (2017). The Court of Appeals has held that strict compliance with the separate document rule can be "waived, at least where . . . the trial court intended the docket entries made by the court clerk to be a final judgment and where no party objected to the absence of a separate document after the appeal was noted." *Id*. at 68 (citing *Suburban Hospital v. Kirson*, 362 Md. 140, 154-56 (2000)). In this case, no party has objected to the form of the court's order of dismissal, and the docket entry of 9/14/17 accurately sets forth the substance of the court's judgment. Accordingly, we deem the lack of a separate document to be waived.